In the Matter of HOWARD S. SCHWARTZ et al., Respondents, and JOSEPH C. POLIFRONE, Respondent-Appellant, v JAMES P. CORCORAN, as Superintendent of Insurance of the State of New York, et al., Appellants-Respondents, and MEDICAL MALPRACTICE INSURANCE ASSOCIATION et al., Respondents.

First Department, July 31, 1986

## APPEARANCES OF COUNSEL

*Robert Silk* of counsel *(Silk & Bunks, P. C.,* attorneys), for respondents and respondent-appellant.

*Jane Breslin Jacobs* of counsel *(Richard G. Liskov* with her on the brief; *Robert Abrams, Attorney-General,* attorney), for appellants-respondents.

*Michael A. Ellenberg* of counsel *(Leon E. Roday* with him on the brief; *LeBoeuf, Lamb, Leiby & MacRae,* attorneys), for respondent-appellant-respondent.

*T. Richard Kennedy* of counsel *(Edward Thompson* and *Larry P. Schiffer* with him on the brief; *Werner, Kennedy & French,* attorneys), for Medical Malpractice Insurance Association, respondent.

*Joseph K. Gormley* of counsel *(Joseph J. LaBarbera* and *Joan Russo* with him on the brief; *Lifshutz & Pollard, P. C.,* attorneys), for Bronx County Medical Society and another, *amici curiae.*

## OPINION OF THE COURT

FEIN, J.

In this CPLR article 78 proceeding seeking vacatur of an order of the Superintendent of Insurance of the State of New York (Superintendent), the Superintendent appeals from so much of an order and judgment, Supreme Court, New York County (Robert E. White, J.), entered November 1, 1985, as granted the petition by annulling that part of the Superintendent's January 11, 1985 order which determined that the Medical Malpractice Insurance Association (MMIA) rate is the "lowest appropriate base rate for physicians and surgeons

professional liability coverage in New York State" and attempted to utilize said rate to fix the rates of other malpractice insurance carriers, and also annulling that part of the directive that each medical malpractice insurer submit a rate filing for the 1984-1985 policy year "actuarially equivalent" to the MMIA rate so fixed.

Respondent Medical Liability Mutual Insurance Company (MLMIC) appeals from so much of the order and judgment as denied its motion to dismiss the petition and denied it leave to answer the petition.

Petitioner Joseph C. Polifrone, M. D. (Polifrone) cross-appeals from so much of the order and judgment as denied that part of the petition which sought to annul so much of the Superintendent's order as approved an increase in MMIA's rates for physicians and surgeons professional liability insurance. Polifrone is a physician insured by MMIA.

Petitioner Howard Stanley Schwartz, M. D. (Schwartz), is a physician insured by respondent Physicians Reciprocal Insurers (PRI).

Petitioner William Winner, M. D. (Winner), is a physician insured by MLMIC.

MMIA is a statutorily created, nonprofit, unincorporated association established to provide medical malpractice insurance which is not readily available in the voluntary market. The rates for most insurance carriers are governed by Insurance Law article 23. All insurance companies directly writing personal injury insurance in New York are required to be members of MMIA as a condition of their continued authority to transact business in this State.

MMIA is required by the Insurance Law to provide primary medical malpractice insurance up to $1 million per occurrence, with an annual aggregate limit of $3 million, upon the application of any physician or surgeon licensed to practice in New York (Insurance Law § 5502 [e] [1]; § 5506). MMIA's rates are developed and filed under the standards of Insurance Law articles 23 and 55.

Insurance Law § 5505 (b) provides, in part: "All rates shall be on an actuarially sound basis, [and] be calculated to be self-supporting * * * The premiums shall be fixed at the lowest possible rates consistent with the maintenance of solvency of the association and of reasonable reserves and surplus therefor."

Insurance Law § 2303 provides, in part: "Rates shall not be

excessive, inadequate, unfairly discriminatory, destructive of competition or detrimental to the solvency of insurers."

In developing MMIA's rates, Insurance Law § 5505 (a) provides that consideration shall be given to: "past and prospective loss and expense experience for medical malpractice insurance written and to be written in this state, trends in the frequency and severity of losses, the investment income of the association, and such other information as the superintendent may require." The Superintendent is required to take all appropriate steps to make available to MMIA the loss and expense experience of insurers previously writing medical malpractice insurance in New York. He is empowered to disapprove a rate filing by MMIA which does not meet the requirements of the Insurance Law (§ 2305 [b]; § 2321 [b]). MMIA is entitled to a hearing challenging the disapproval of its rate filing and to a written final determination concerning its rate filing.

MLMIC is the largest writer of medical malpractice insurance in New York. In the early 1980's, both MLMIC and MMIA filed for a series of substantial increases. The Superintendent approved a different rate increase for each. MMIA demanded an adjudicatory hearing. When the Superintendent declined to hold a hearing, MMIA instituted an article 78 proceeding in the nature of mandamus to compel a hearing. The petition was granted (Matter of Medical Malpractice Ins. Assn. v Lewis, 112 Misc 2d 103, affd 87 AD2d 571, lv denied 56 NY2d 506). A hearing was held and concluded on July 20, 1982.

MMIA filed a request for an increase for the 1983-1984 policy year. There were further proceedings, and finally the Superintendent directed a hearing on MMIA's 1983 rate filing. The Superintendent invited all insurers potentially affected by a decision on MMIA's premium rate, including MLMIC, to participate in the hearings. The hearings were held over a period of several months, first before former Chief Judge Stanley H. Fuld, and later, after his recusal, before former Judge Domenick L. Gabrielli (the hearing officer). During the hearings, MMIA filed for a rate increase for 1984-1985. It was decided that the scope of the hearing should be expanded to include a determination of that rate as well as the rate for 1983-1984. Extensive testimony was taken. The hearing officer issued written findings, conclusions and recommendations on December 10, 1984.

The hearings demonstrated that MMIA's rates were based upon the combined State-wide experience of major writers of medical malpractice insurance, not MMIA's experience alone. MLMIC and other insurers do not rely on their own experience.

In his 25-page report, Judge Gabrielli determined that MMIA was entitled to a 42% rate increase for the 1983-1984 policy year and an additional 8% for the 1984-1985 policy year. Judge Gabrielli noted that the findings were limited to the MMIA rate filings under review and were not "generic" determinations.

On January 11, 1985 the Superintendent adopted Judge Gabrielli's recommendations. However, the Superintendent concluded that despite Judge Gabrielli's caveat, the report had broader implications than merely the proper level of MMIA rates. The Superintendent stated that he expected other medical malpractice insurers to submit rate filings that would bring their rates to an actuarially equivalent level unless there was sufficient evidence to justify deviations from the MMIA level. The Superintendent stated that the other insurers could submit evidence to justify different rate levels.

The Superintendent's order stated in relevant part:

"[A]lthough Judge Gabrielli limits his report to MMIA and does not render a generic determination in this matter, I find the Gabrielli Report to have broader implications * * *

"It is clear from the Gabrielli Report, testimony and other evidence produced at the hearing that the data base used in the analysis of the appropriate rate for MMIA in regard to physicians and surgeons professional liability insurance in New York has great relevance to, and in many respects is, the data base utilized by the other medical malpractice insurance carriers in this State.

"In the absence of observable and measurable factors to the contrary, the rate that is appropriate for MMIA is also the lowest appropriate base rate for physicians and surgeons professional liability coverage in New York State. However, other insurers are not foreclosed from submitting sufficient evidence to justify rate levels that deviate from those that I have found to be appropriate for MMIA. Nor are other insurers precluded from filing for appropriate retrospective programs that could return dividends after actual experience has justified such action.

"Therefore, in order to comply with the statutory standards

for insurance rates set forth in Article 23 of the Insurance Law, I expect each insurer writing physicians and surgeons professional liability insurance in this State to promptly submit a rate filing for the 1984-85 policy year that will bring its rates to the level actuarially equivalent (unless it has sufficient evidence to justify deviations from such level) to the MMIA occurrence rate level determined to be appropriate by this Order. Similarly, I expect each insurer that offers claims-made coverage to promptly submit a rate filing for the 1984-85 policy year that will bring its rates to the level actuarially equivalent to the MMIA occurrence rate level determined to be appropriate by this Order, subject to any deviations that may be justified by sufficient evidence."

Thereafter, petitioners instituted this proceeding to prohibit enforcement of the Superintendent's order, asserting that the Superintendent had exceeded his statutory authority by authorizing an industry-wide rate, and that his order was arbitrary and capricious for failing to consider other data relating to claims management. MLMIC, MMIA and other insurers cross-moved to dismiss the petition. The proceeding came before Justice White in Special Term, whose ruling, in pertinent part, granted the petition to the extent of annulling so much thereof as sought to utilize the hearing officer's findings to fix the MMIA rate as the "lowest appropriate base rate for physicians and surgeons professional liability coverage in New York State." The court also annulled the direction that each malpractice carrier submit a rate filing for the 1984-1985 policy year which would bring that carrier's rates to a level "actuarially equivalent" to those of MMIA. Special Term denied the application and dismissed the petition with respect to the challenge that the hearing officer failed to consider evidence pertaining to claims management. Special Term concluded that "[i]n utilizing the MMIA data in a manner which is binding on other carriers, the Superintendent acted in a manner contrary to the laws of logic and statute."

We disagree. The primary purpose of the hearing which led to the Superintendent's order was to establish a MMIA premium rate for the 1983-1984 policy years, consistent with solvency and neither excessive nor inadequate. The secondary purpose, which led to the participation of MLMIC and others, was the intention of the Superintendent to compile industry-wide data which would act as a guide to medical malpractice rates for all insurers in New York. This did not amount to

setting an illegal industry-wide rate contrary to Insurance Law §§ 2303 and 2304 (b), as petitioners assert.

Special Term misconstrued the Superintendent's order. The statute permits the Superintendent to consider the experience of other insurers in making rates for an insurance company. The order did not assert that MMIA rates were also to cover the entire medical malpractice insurance industry. The Superintendent plainly stated that the requested evidence could justify deviations from the MMIA level. Special Term substituted its judgment for that of the Superintendent. It was without authority to do so (Matter of Procaccino v Stewart, 25 NY2d 301). The Superintendent is vested by the statute with broad power and responsibility to implement the Insurance Law (Matter of New York Public Interest Research Group v New York State Dept. of Ins., 66 NY2d 444; Ostrer v Schenck, 41 NY2d 782). As these and other cases hold, a determination of the Superintendent is to be upheld by the courts unless it lacks a rational basis (Matter of American Tr. Ins. Co. v Corcoran, 105 AD2d 30, affd 65 NY2d 828). Contrary to petitioners' contention, Insurance Law § 304 (b) does not mandate the Superintendent to adopt the report of the hearing officer, Judge Gabrielli, in toto. The Superintendent was within his power in finding "broader implications" in that report, affecting other insurers. Section 304 (b) provides, in pertinent part: "Such report, if adopted by the superintendent or by his authority may be the basis of any determination made by the superintendent or by his authority." Plainly, this permits the Superintendent to use a hearing officer's report as the "basis" for a determination without being absolutely bound by the report (Matter of Simpson v Wolansky, 38 NY2d 391, 394). The Insurance Law sets forth the guidelines for the Superintendent's review of rate obligations so that they may not be "excessive, inadequate, unfairly discriminatory, destructive of competition or detrimental to the solvency of insurers" (Insurance Law § 2303). The statute does not prescribe the weight to be accorded to the various factors (Matter of Old Republic Life Ins. Co. v Wikler, 9 NY2d 524).

The Superintendent's order did not set a single rate for medical malpractice insurance. It clearly permitted evidence to be submitted by each insurer as to its own rates. The order had a rational basis and was not arbitrary or capricious. Nothing in the record warrants such a finding or supports an order of prohibition (Matter of Morgenthau v Erlbaum, 59 NY2d 143, cert denied 464 US 993).

The order and judgment (one paper), Supreme Court, New York County (Robert E. White, J.), entered November 1, 1985, should be modified, on the law, to the extent of reversing the annulment of the Superintendent's determination that MMIA's rate was an appropriate base rate, reversing the annulment of the direction to other insurers to submit filings which could provide evidence for deviations from that rate, and reinstating those parts of the Superintendent's determination, and the order and judgment should be otherwise affirmed, without costs.

KUPFERMAN, J. P., ROSS, KASSAL and ROSENBERGER, JJ., concur.

Order and judgment (one paper), Supreme Court, New York County, entered on November 1, 1985, unanimously modified, on the law, to the extent of reversing the annulment of the Superintendent's determination that the Medical Malpractice Insurance Association's rate was an appropriate base rate, reversing the annulment of the direction to other insurers to submit filings which could provide evidence for deviations from that rate, and reinstating those parts of the Superintendent's determination, and the order and judgment (one paper) is otherwise affirmed, without costs and without disbursements.