THE PEOPLE OF THE STATE OF NEW YORK ex rel. 176 WEST 87TH STREET CORPORATION, Appellant, *v.* JACOB A. CANTOR et al., as Commissioners of Taxes and Assessments of the City of New York, Respondents.

**Tax — New York (city of) — construction of section 889a of the Greater New York charter providing that buildings in course of construction but not completed on the preceding first of October shall not be assessed — when apartment house not completed within meaning of such section.**

1. The provision of section 889a of the Greater New York charter (L. 1913, ch. 324), that a building in course of construction, commenced since the preceding first day of October and not ready for occupancy, shall not be assessed, was enacted to encourage building by extending to owners a limited exemption from taxation during the time when no income would be derived from the capital invested. Until a building can be occupied for living purposes it is not to be presumed that there can be much income from rentals.

2. Where it appears that an apartment house in New York city, assessed for taxation for the year 1918, was without heating apparatus and proper lighting fixtures and unfinished in other essential details on the 1st day of October, 1917, and for some time thereafter, it must be held that the building was still in the course of construction and not ready for occupancy on that date within the purview of section 889a of the charter, and it should not, therefore, have been assessed for the year 1918, and the assessment should be reduced to the conceded value of the land without the building.

*People ex rel.* 176 *West 87th Street Corporation* v. *Cantor*, 191 App. Div. 946, modified.

(Argued January 13, 1921; decided March 1, 1921.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered April 16, 1920, which unanimously affirmed an order of Special Term reducing an assessment for taxation upon real property of the relator.

The facts, so far as material, are stated in the opinion.

*George L. Ingraham* and *John M. Stoddard* for appellant. After the addition of section 889a to the charter of the

city of New York, it became illegal to assess a building in course of construction and not ready for occupancy on the first day of October in any year. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Purdy*, 167 App. Div. 645; 223 N. Y. 91.)

*John P. O'Brien, Corporation Counsel, William H. King, R. M. de Acosta* and *Montrose Strasburger* for respondents. There is no merit in the contention of the relator that the building was not ready for occupancy because the final certificate of the tenement house department had not been issued by October 1, 1917. (*People ex rel. Gleason* v. *Purdy*, 223 N. Y. 88.) The legislature did not intend that a building must be completed in minute detail to be assessable for purposes of taxation. (*People ex rel. N. Y. C. & H. R. R. R. Co.*, v. *Purdy*, 216 N. Y. 704; *People ex rel. Gleason* v. *Purdy*, 179 App. Div. 232; 223 N. Y. 88; *People ex rel. Orinoco Realty Co.* v. *Purdy*, 186 App. Div. 891.)

CRANE, J. This is a proceeding under a writ of certiorari to review an assessment for taxation upon real property located at 176 West Eighty-seventh street in the city of New York.

The question presented is whether the building or improvements on the property should be assessed for taxation for the year 1918 in view of the provisions of section 889a of the Greater New York charter. That section provides " a building in the course of construction, commenced since the preceding first day of October and not ready for occupancy, shall not be assessed."

The excavation for the building was commenced on November 23, 1916. When erected it consisted of a thirteen-story structure containing seventy-three apartments in the upper twelve floors, each designed for occupancy as a dwelling for one family, and containing on the ground floor eight stores, with separate entrances

and certain servants' rooms to be used in connection with the dwelling apartments, and an entrance hall.

Thus far, the courts have held that the building was virtually completed and ready for occupancy on the first day of October, 1917, and, therefore, subject to assessment and taxation.

The appellant contends that the findings of the trial court do not sustain the conclusions of law. So many things were yet to be done to make the building fit for occupancy that the relator insists that the building was not finished within the terms or intention of the above section.

A statement of the facts as contained in the decision leads us to the conclusion that the relator is right. All of the apartments had been rented while the building was in the course of erection, and by the first of October, 1917, some of the tenants had moved their furniture into their respective apartments. No heating facilities, however, had been furnished by that time. Of the six hundred steam heating radiators which were required for the purpose of heating the apartments only twelve had been installed. It took one hundred and twenty days' work after the first of October to construct the heating apparatus. In October the temperature averaged fifty-four degrees whereas seventy degrees is requisite for comfortable living. This was a new building where more heat may be essential in the fall of the year than in an old one.

The floors had not been scraped, shellacked or polished, neither were the lighting fixtures put in. It took ten men nearly a month after the first of October to install the lighting fixtures. Months were given to the finishing of the requisite painting. The trial judge found that about half the hardware, including door locks, door knobs and window fastenings, and doors separating rooms — the dining rooms from the living rooms — had not been furnished.

As to the stores upon the first floor these, concededly, were unfinished, as there was no plaster on the walls or ceilings and the floors had not been laid.

It has been found as a fact that these were high-class apartments, but I cannot see that this has anything to do with the case.

The relator, apparently, did everything it could to rush this building and have it ready for its tenants on the first of October, 1917. It did nothing to delay the work for the purpose of evading assessment or taxation for that year. It applied on the 21st day of September to the tenement house department for a certificate of occupancy, although as above stated the building was far from completion. By section 121 of the Tenement House Law (Cons. Laws, ch. 61) no building constructed into a tenement house can be occupied in whole or in part for human habitation until the department shall issue a certificate that the building conforms in all respects with the requirements of the law.

This certificate of occupancy, as it is called, was not issued to the relator until nine days after the first of October.

The purpose of section 889a of the charter undoubtedly was to encourage building by extending to owners a limited exemption from taxation during the time when no income would be derived from the capital invested. Until a building could be occupied for living purposes it was not to be presumed that there could be much income from rentals. (*People ex rel. N. Y. C. & H. R. R. R. Co.* v. *Purdy,* 216 N. Y. 704.)

It does not strike us as reasonable to consider an apartment, irrespective of its class or elegance, fit for occupancy which has no heat during the fall months, and also is lacking in proper lighting facilities. People may go out for their meals, but during the time that they are at home, light and heat are absolutely necessary. Especially is this so with families having young children.

We can hardly imagine a building of seventy-three apartments in the heart of the city of New York being without some children.

Considering, therefore, all the facts and circumstances as stated in the findings, we have unanimously come to the conclusion that this building known as 176 West Eighty-seventh street was still in the course of construction and not ready for occupancy on the first of October, 1917. It should not, therefore, have been assessed for the year 1918. This is the meaning of section 889a of the charter of the city.

The trial court found that the unimproved real estate was of the actual value of $185,000 and that with the improvement it was worth $650,000, which was the amount of the assessment appealed from. In view of our determination the order of the Appellate Division and of the Special Term must be modified by striking out the assessment upon the improvements and reducing the amount to the conceded value of the land without the improvements, viz., $185,000. As thus modified the order appealed from should be affirmed, with costs to the appellant in all courts.

Hiscock, Ch. J., Hogan, Cardozo, Pound, McLaughlin and Andrews, JJ., concur.

Ordered accordingly.