In the Matter of 5–7 PARK AVENUE CORP., Respondent, against TAX COMMISSION OF THE CITY OF NEW YORK et al., Appellants.

First Department, October 27, 1959.

*James J. McGowan* of counsel (*Morris Handel* with him on the brief; *Charles H. Tenney, Corporation Counsel,* attorney), for appellants.

*Anthony Curreri* of counsel (*A. Walter Socolow* with him on the brief; *Eugene J. Schwartz,* attorney), for respondent.

McNALLY, J. Respondents-appellants appeal from a final order entered December 23, 1957, reducing the assessments on petitioner's real property, 5–7 Park Avenue (Block 890, Lot 1), Manhattan, for the tax years 1954–55 through 1956–57. The reductions amounted to $350,000, or about 22%, for the first year in issue, and to $150,000, or 7½%, for the two succeeding years. The assessments and trial court findings are as follows:

ASSESSMENTS

| Year | Land | Building | Total |
|---|---|---|---|
| 1954–55 | $500,000 | $1,100,000 | $1,600,000 |
| 1955–56} 1956–57} | 550,000 | 1,450,000 | 2,000,000 |

TRIAL COURT

| Year | Land | Building | Total |
|---|---|---|---|
| 1954–55 | $450,000 | $800,000 | $1,250,000 |
| 1955–56} 1956–57} | 450,000 | 1,400,000 | 1,850,000 |

The issues are somewhat different in respect of the first tax year, 1954–55, and the two succeeding years, 1955–56 and 1956–57. In addition to the common issue of valuation, insofar as the first year, there is the issue of partial statutory tax exemption for the building.

The assessments, with the exception of the 1954–55 building assessment, are amply supported by the record which includes

proof of successive sales of the property in 1952 and 1954 and sales of various comparable properties in the area. Under the circumstances, we hold no reduction was warranted except as hereinafter indicated.

With reference to tax year 1954–55, the record discloses the following. Prior to the tax years here involved the land appeared on the tax map as two separate tax lots, numbered 1 and 7. Lot 1 was a corner parcel, 25 feet by 100 feet, fronting 25 feet on Park Avenue, and improved with a brownstone dwelling. Lot 7, an L-shaped parcel around Lot 1, was improved with an apartment house built in 1930, 15 stories high on Park Avenue and 19 stories plus triplex penthouses on East 34th Street. For the prior tax year, 1953–54, these parcels were assessed as follows:

| Lot | Land | Building | Total |
|-----|------|----------|-------|
| 1 | $135,000 | $3,000 | $138,000 |
| 7 | 300,000 | 800,000 | 1,100,000 |

After January 25, 1953, the old structure on former lot 1 was demolished and a new building thereon erected which was not completed until June 9, 1954. It is a 15-story and penthouse apartment building which is joined with the old structure. This new structure is not a complete entity; it does not have its own interior stairways, standpipe system, water supply and sewer connections to the street mains, nor do the exterior walls of the new structure completely enclose its perimeter. Its operation is possible only as an addition to the existing building.

It is appellants' contention that the building completed in 1954 was an alteration of an existing structure and not a new building within the sense and intendment of the statute granting exemption to buildings in the course of construction. The statute in question is section 157–1.0 of the Administrative Code of the City of New York which reads as follows: " § 157–1.0  Taxable status of buildings in course of construction.  A building in course of construction, commenced since the preceding twenty-fifth day of January and not ready for occupancy on the twenty-fifth day of January following, shall not be assessed unless it shall be ready for occupancy or a part thereof shall be occupied prior to the fifteenth day of April."

The exemption is conferred upon a " building in course of construction " and building is defined in the same law as " any building, structure, premises, or part thereof." (Administrative Code, § 641–1.0, subd. 2.)  It may well be that the structure here involved comes within the ambit of an alteration within

the meaning of section C26–11.0 of the Administrative Code which defines alteration to include any change in any building or structure "whether by extension on any side or by any increase in height". Nevertheless, the said sections are not mutually exclusive. We look to the purpose of the statutory exemption to ascertain its scope. (Cf. *Friedman* v. *Ontario Holding Corp.,* 279 App. Div. 23, affd. 304 N. Y. 625.)

The statutory exemption was intended to encourage building. "The purpose of section 889a of the charter undoubtedly was to encourage building by extending to owners a limited exemption from taxation during the time when no income would be derived from the capital invested. Until a building could be occupied for living purposes it was not to be presumed that there could be much income from rentals." (*People ex rel. 176 W. 87th St. Corp.* v. *Cantor,* 230 N. Y. 312, 315.) Section 889a of the New York City Charter was the antecedent of section 157–1.0 of the Administrative Code. The new structure contains 58 apartments, consisting of 160 rooms, and three stores on the street level, and involved an expenditure of about $970,000. The statute does not by its provisions limit the exemption to detached and totally independent structures. On all the proof we conclude that the statutory exemption is applicable to the new structure for the tax year 1954–55.

Lots 1 and 7 for the year 1954–55 were merged into one, new Lot 1. The assessment for the tax year 1954–55 is land $500,000, total $1,600,000, and, therefore, assigns to the building a value of $1,100,000. By January 25, 1954, the old building on Lot 1 had been demolished and in its place stood the steel skeleton on the new building on which brick work was just starting. Implicit in the 1954–55 assessment was a building value of $1,100,000 against a building value of $800,000 on the older building on former Lot 7. The appellants suggest that the increase of $300,000 in the building value, 37½% over the value for the preceding year, was a true increase in building value in line with the increases in real property assessments taking place generally throughout the city during the years in question and reflecting the substantial improvement in the real property market, implying that no assessment was, in fact, levied on the new structure. The record does not substantiate this claim nor the increase for the tax year 1954–55. That the assessment reflects the value of the incomplete structure is demonstrated by the fact that the proof shows that in January, 1954, the finished concrete and structural steel work and the exterior masonry work involved the expenditure of approximately one half of the $970,000 total cost of construction.

We hold that the new structure erected on former Lot 1 was a building in course of construction within the meaning of the Administrative Code and the trial court properly granted tax exemption therefor; that the assessment for the year 1954–55 should not have included any value attributable to the partly completed 15-story structure and that the record sustains the reduction of the building value to $800,000 for the tax year 1954–55.

Accordingly, the final order should be modified, on the law and on the facts, to reinstate the assessments for the years 1955–56 and 1956–57, and to reinstate the assessment on the land for 1954–55 at $500,000, and affirm the reduction on the building to $800,000, for a total of $1,300,000, with costs.

RABIN, J. P., M. M. FRANK, STEVENS and BASTOW, JJ., concur.

Final order unanimously modified, on the law and on the facts, to reinstate the assessments for the years 1955–56 and 1956–57, and to reinstate the assessment on the land for 1954–55 at $500,000, and affirm the reduction on the building to $800,000, for a total of $1,300,000, with costs.

Settle order.