■ In the Matter of OAKWOOD IN FOREST HILLS, INC., Appellant, v. TAX COMMISSION OF THE CITY OF NEW YORK, Respondent.— Judgment of the

Supreme Court, County of Queens, dated January 25, 1967, affirmed, with costs. This is a proceeding to review the tax assessment on petitioner's premises for the year 1963–64. The assessment for that year, as fixed by respondent Tax Commission, totaled $825,000. Included therein was a $690,000 "progress" assessment representing the value of the building constructed on the premises. Special Term held that the building was "ready for occupancy" prior to April 15, 1963 and that, therefore, the progress assessment was in accordance with section 157–1.0 of the Administrative Code of the City of New York. Accordingly, respondent's total assessment was upheld. Section 157–1.0 of the Administrative Code provides: "Taxable status of building in course of construction.— A building in course of construction, commenced since the preceding twenty-fifth day of January and not ready for occupancy on the twenty-fifth day of January following, shall not be assessed unless it shall be ready for occupancy or a part thereof shall be occupied prior to the fifteenth day of April." The parties agree that the building was commenced during the spring of 1962, i.e., subsequent to January 25, 1962. The only question of this appeal is whether, as a matter of law, on the facts adduced below, the building was ready for occupancy prior to April 15, 1963. It is undisputed that the subject building was not eligible for a certificate of occupancy prior to April 15, 1963. At the trial, the inspector for the Department of Buildings testified that he had inspected the building on April 29, 1963 and on that date he could not have issued a temporary certificate of occupancy. Petitioner contends that, since the building could not have received a certificate of occupancy prior to April 15, 1963, it was not then ready for occupancy. However, it is our opinion that the phrase "ready for occupancy" in the taxing statute does not contemplate that stage of completion which would guarantee the issuance of a certificate of occupancy by the Department of Buildings. It has been previously held that the forerunner of section 157–1.0 provided a *limited* exemption, for the purpose of encouraging building, and that the statute was bottomed on the presumption that there would be no rental income prior to occupancy (*People ex rel. 176 W. 87th St. Corp.* v. *Cantor*, 230 N. Y. 312, 315). This intention could be very easily frustrated if in all cases where a certificate of occupancy could not be issued prior to April 15 the exemption would be said to apply. There is nothing in the wording of the statute to require such a result and the spirit of the statute would be offended by such a result (see *Matter of Sutton-53rd Corp.* v. *Tax Comm.*, 7 N Y 2d 416). "When the statute purports to grant an exemption from taxation, the universal rule of construction is that the tax exemption provision is to be construed strictly against the one who asserts the claim of exemption, in the absence of expressed legislative intent that the exemption is to be construed otherwise, or of anything to indicate that the purpose of the exemption was to secure equality of assessment. An exemption from taxation must be clearly defined and founded upon plain language, without doubt or ambiguity. Whenever doubt arises it is to be resolved against the exemption" (51 Am. Jur., Taxation, § 524). Clearly, the general rule of construction in favor of the taxpayer must give way to the more specific rule of construction applicable to exemptions. We are of the opinion that the inability of a building to qualify for a certificate of occupancy will not *per se* render a building not ready for occupancy within the meaning of the taxing statute. The failure of a building to qualify for a certificate of occupancy is one of several circumstances to be considered in determining whether a building is ready for occupancy for tax assessment purposes. The underlying test, in accordance with the intent of the statute, is whether the construction of the building has reached the point where an economically viable structure is in existence as of the critical cut-off date. If the statute were not so construed, it would be possible

for a situation to arise where it would be economically beneficial to the owner of a building to forego rents for a month or two and thereby avoid property tax for a full year. Within this framework, it is clear that the term "substantially completed" serves to correlate the statutory "ready for occupancy" with the practical question of whether or not an income producing entity is in existence. As used in the cases, "substantially completed" is merely a yardstick by which to measure whether the building is "ready for occupancy" and it is not a substitute therefor (see *Matter of Briarock Corp. [Boyland]*, N. Y. L. J., June 8, 1960, p. 18, col. 1). As concerns the building in question, we are of the opinion that it was ready for occupancy as of April 14, 1963. The president of the petitioner testified that as of April 14, 1963, major work was yet to be completed upon the building. However, the testimony of the tax assessor was directly to the contrary. According to him the only work required to be completed consisted of painting and concrete work on the exterior. The Buildings Department inspector also stated that the main body of incomplete work related to the exterior of the building, with additional work required in the lobby. Petitioner's evidence was also refuted by its representations made for the purpose of procuring advances on its mortgage money. Certainly the finishing of exterior concrete work was not essential to the occupancy of the building. This also holds true for completing the lobby. Discounting the testimony of petitioner's president, which under the circumstances appears to be highly exaggerated, there is no doubt that this property was "ready for occupancy" under section 157–1.0 of the Administrative Code of the City of New York. Beldock, P. J., Brennan, Rabin and Hopkins, JJ., concur; Christ, J., dissents and votes to reverse the judgment and grant the petition. The sole question in this appeal is whether a newly constructed building that was assessed for taxes in 1963–64 was "ready for occupancy * * * prior to the fifteenth day of April" of 1963 within the meaning of section 157–1.0 of the Administrative Code of the City of New York. The majority of this court is affirming a holding that the statutory phrase "ready for occupancy" may be construed to mean "substantially completed". That proposition was long ago rejected (see *People ex rel. Charter Const. Co.* v. *Purdy*, N. Y. L. J., Dec. 20, 1917, p. 929, col. 3). The court should not change the clear language of a taxing statute to achieve what it views as a desirable result (see *Matter of Suffolk County Fed. Sav. & Loan Assn.* v. *Bragalini*, 5 N Y 2d 579; see, also, *People ex rel. New York Cent. & Hudson Riv. R. R. Co.* v. *Purdy*, 167 App. Div. 637, revd. 216 N. Y. 704 upon the dissenting opinion in the Appellate Division). Taxing statutes are to be construed most favorably to the taxpayer. In this case the taxing municipality's own agent, a Department of Buildings Construction Inspector, testified that he had inspected the building on April 29, 1963, two full weeks after the statutory cut-off date, and he found that even on that late date he could not have issued a temporary certificate of occupancy. Without such a certificate it is unlawful to occupy a building (Multiple Dwelling Law, § 301) and in the present case a temporary certificate was not issued until May 14, 1963. This same construction inspector further testified that the oil burner in the premises had been fired on May 8, 1963 for the first time in a test; it was only then that the Fire Department approved the use of the burner. Prior thereto a propane facility was supplying some temporary heat. The lack of heating facilities and the lack of a certificate of occupancy were material factors in *People ex rel. 176 W. 87th St. Corp.* v. *Cantor* (230 N. Y. 312), where the Court of Appeals struck out an assessment for improvements. The forerunner of section 157–1.0 was construed there and that statute contained the very same "ready for occupancy" test. It is true, however, that an employee of the Real Property Assessment Department

asserted that the heating plant was operating prior to the cut-off date in the instant case. The facts, nevertheless, support the petitioner taxpayer. Examining the evidence in a light most favorable to the City, as shown by it own inspector witnesses, one finds without contradiction that the sidewalks and paths into the building were not completed; handrailings in the public lobby and halls were missing; the lobby and entrance were generally incomplete; all apartments needed to be painted; and some incidental electrical and plastering work needed to be done. Although there is some contradictory evidence, we should not entirely overlook the testimony of petitioner's president that no cooking stoves had been installed; toilet pluming, hot water and heating lines were incomplete; floors in all apartments had to be installed; and there were not even any locks in the apartments. There was no showing of bad faith on petitioner's part in this case. Under all the facts, the building was uninhabitable at the critical time and under the applicable statutory test I cannot find that the building was "ready for occupancy" prior to April 15 cut-off date.