In the Matter of GRAMERCY NORTH ASSOCIATES, Respondent, v ABRAHAM BIDERMAN, as Commissioner of the Department of Housing Preservation and Development of the City of New York, et al., Appellants.

First Department, July 25, 1991

APPEARANCES OF COUNSEL

*Reed G. Schneider* of counsel *(Edith I. Spivack* with him on the brief; *Victor A. Kovner, Corporation Counsel,* attorney), for appellants.

*Steven R. Lapidus* of counsel *(Wayne R. Smith* with him on the brief; *Lerner Lapidus & Franquinha,* attorneys), for respondent.

OPINION OF THE COURT

Ross, J.

The issue on this appeal is whether the determination of the Department of Housing Preservation and Development of the City of New York, denying the application of Gramercy North Associates, for partial tax exemption benefits, pursuant to Real Property Tax Law § 421-a, was arbitrary and capricious.

In order "to spur new construction of multiple dwellings to meet a housing shortage afflicting * * * municipalities * * * [throughout the State of New York]" *(Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 62 NY2d 539, 543 [1984]), in 1971, Real Property Tax Law (RPTL) § 421-a, providing partial exemption from local municipal taxes for newly constructed multiple dwellings, became law *(see,* L 1971, ch 1207).

Thereafter, on November 29, 1984, pursuant to State enabling legislation *(see,* L 1984, ch 346), the City Council (Council) of the City of New York (City) enacted Local Law No. 78, eliminating section 421-a tax benefits for the geographic area south of 96th Street in New York County, since the Council had found "that the market for residential construction in certain areas of the city has strengthened in recent years and, that now, in specified areas of the city the need for tax incentives to stimulate residential construction has been significantly reduced" *(see,* Local Laws, 1984, No. 78 of City of New York § 1, entitled "Legislative Declaration").

Initially, Local Law No. 78 became section J51-4.0 of the Administrative Code of the City of New York (Administrative Code), and thereafter, same was redesignated section 11-245.

A one-year grace period was provided in section 11-245 of the Administrative Code, so that market-rate residential premises could still receive section 421-a tax benefits, if the construction of such new premises commenced prior to November 29, 1985 *(see,* § 11-245 [a]). Further, section 11-245 (d), states, in pertinent part, that, during the grace period, construction is to be deemed timely commenced, when "the excavation and the construction of initial footings and foundations commences in good faith", prior to November 29, 1985.

Gramercy North Associates (Associates) is a New York limited partnership, and, on or about October 3, 1985, the Department of Buildings of the City of New York (Department) issued to Associates an excavation and foundation permit for a site, located at No. 46 Lexington Avenue, New York County. Thereafter, on that site, Associates constructed a 26-story cooperative residential apartment building (building), containing 185 apartments, and a plaza area, and, on or about August 5, 1988, the Department issued to Associates a temporary certificate of occupancy for that building.

Since the subject building is located on Lexington Avenue and East 24th Street, an area south of 96th Street *(see,* § 11-245 [a]), same is subject to the restriction on the eligibility to receive section 421-a tax benefits, and therefore, the date that construction actually commenced "in good faith" *(see,* § 11-245 [d]) becomes crucial.

It has long been held that mere excavation is insufficient to be deemed commencement of construction. There must be the introduction of "materials foreign to the soil which eventually become a part of the completed improvement. *In the latter situation, construction is deemed to have commenced" (Matter of Sutton-53rd Corp. v Tax Commn.,* 7 NY2d 416, 420 [1960], *rearg denied* 8 NY2d 785 [1960] [emphasis supplied]).

Although Associates claims to have commenced construction "in good faith", within the meaning of section 11-245 (d), as early as October 1985, about a month prior to the November 29, 1985 cut-off date for eligibility for tax benefits, it was not until late 1987 that Associates filed an application, with the Department of Housing Preservation and Development of the City of New York (HPD), to obtain a "prior opinion" as to the eligibility of the building for such benefits, and a final application was not filed until September 26, 1988.

Our examination of the record indicates that, from the time that Associates first communicated, in 1987, with representa-

tives of HPD, such representatives raised questions about the date when construction actually began, and, for more than a year, Associates and representatives of HPD exchanged correspondence, and held conferences, in which Associates, represented by counsel, made presentations, in support of its claim of eligibility for section 421-a tax benefits.

By letter, dated July 28, 1989, based upon, *inter alia,* inspections made by HPD engineers, HPD denied Associates' application. In pertinent part, the Director of HPD's Tax Incentive Unit, stated, in a letter to petitioner:

"On November 28, 29 and 30, 1985, Lawrence Finkelstein, then the Director of the program, and Joe Canton, a Staff engineer at HPD, surveyed numerous construction sites in Manhattan [New York County] to document the construction. Photographs and file notes taken on November 30, 1985 show that only one footing was sunk in the ground by the cut-off date. Further, over the next six months HPD's engineers visited the site to determine if construction was proceeding. Photographs taken in the winter of 1986 show that the one footing was removed from its original location and discarded on another part of the site, with no other footing sunk * * *.

"The installation of one footing and its subsequent removal is an indication that construction did not actually begin in time in good faith for the November 29, 1985 cut-off date. Therefore, the building is ineligible to receive 421 (a) partial tax exemption".

In October 1989, Associates (petitioner) instituted, pursuant to CPLR article 78, a proceeding against HPD, and other City agencies and officials (respondents) to annul the HPD determination, and for a judgment, in the nature of mandamus, directing the refund of $8,602.18 in real estate taxes with interest.

Following the joinder of issue, by order and judgment, entered May 4, 1990, the IAS court granted the petition in its entirety. Thereafter, respondents moved for reargument, and, by order entered December 5, 1990, the IAS court denied reargument, *sua sponte* granted leave to renew, granted renewal, and adhered to its original order and judgment, entered May 4, 1990. Respondents appeal.

This court has stated that "[t]he court is neither a social agency nor a legislative body. Its duty is not to second-guess the wisdom of what an administrative agency has done, nor to reform the procedures and methods used by that agency. * * *

'It is well-settled that the determination of an administrative agency will be accepted by the courts if it has warrant in the record and a reasonable basis in law.' *(Matter of Willcox v Stern,* 18 N Y 2d 195, 203.)" *(Matter of Procaccino v Stewart,* 32 AD2d 486, 489 [1st Dept 1969], *affd* 25 NY2d 301 [1969].) In other words, the judicial review provided by CPLR article 78 is a limited one, since a court must confirm an administrative determination, when the administrator does not act in excess of his or her jurisdiction, or in violation of lawful procedure, or in abuse of his or her discretion, or arbitrarily *(see,* CPLR 7803 [3]; *Matter of Pell v Board of Educ.,* 34 NY2d 222, 230-232 [1974]).

Since the petitioner does not contend that the City did not have the right to establish the November 29, 1985 cut-off date for the construction of buildings, we find that the petitioner has the burden of proof in this case, wherein it is seeking partial tax exemption, pursuant to RPTL 421-a. The Court of Appeals has held "the burden of proof lies with the taxpayer who is seeking to have real property declared tax exempt" *(Matter of New York Botanical Garden v Assessors of Town of Wash.,* 55 NY2d 328, 334 [1982]; *Matter of Grossman v Rankin,* 43 NY2d 493, 502 [1977]).

Our examination of the record indicates that respondents have presented contemporaneous photographic and documentary evidence, as well as affidavits by HPD employees, that only one footing was in place by the deadline of November 29, 1985, and that footing did not become part of the permanent structure, since it was ripped out shortly after the deadline, and was thereafter, in the spring of 1986 rebuilt, when the concrete work on the building began in earnest.

Specifically, Mr. Walter Whitcher, Director of Engineering in the Engineering and Architecture Division of the HPD, stated, in an affidavit dated November 9, 1989, "I visited the site of petitioner's property * * * in November and December 1985 to inspect and photograph construction progress so that HPD would have a record of the status of construction of its footings and foundations. * * * The laying of a foundation marks the first step of construction of an apartment tower. A foundation transfers building loads to supporting soils. A footing is a foundation element intended to bear a column. A footing must be founded on undisturbed soil or on satisfactorily compacted or prepared materials. * * * On November 30, 1985, the day after the deadline, I visited the site with Gary Gutterman, another HPD official. I saw that petitioner's exca-

vation was incomplete, with an uneven base, and mounds of soil piled around the perimeter. There was no wooden sheeting or shoring installed to hold in place the soil underneath the sidewalks adjoining the site. I saw one concrete block footing placed in an excavated area of the site. There were no other footings or foundations present that day. I photographed the site on November 30, 1985".

Further, in that same affidavit, Mr. Whitcher noted "On December 5, 1985, I revisited the site with Joseph Canton, an HPD Senior Civil Engineer. I saw that excavation was continuing and that erection of sheeting around the perimeter of the site to support the adjoining sidewalks was in progress. I also saw that the one footing in place on November 30, 1985, had been pulled from its original position and was lying at an angle on the surface of a mound of soil at one edge of the excavation site. On December 5, I saw no footings or foundations in place on the site. I photographed the site on December 5, 1985". Copies of the photographs referred to by Mr. Whitcher in his affidavit, *supra,* appear in the record on appeal. In addition, Mr. Canton has submitted an affidavit to similar effect as Mr. Whitcher, appearing in the record on appeal.

On December 14, 1985, Mr. Whitcher returned to the site, and found that, since his last inspection on December 5th, "the wooden sheeting along the site perimeter was complete, but excavation was incomplete. I saw that a single new concrete block footing was in place at approximately the same location on the site as the initial footing. It appeared that the base of the footing was at a deeper level than that of the initial footing. I photographed the site on December 14, 1985". Copies of the three photographs taken by Mr. Whitcher on December 14, 1985, appear in the record on appeal.

In compliance with Administrative Code § 27-603, petitioner submitted reports of its concrete pourings for the building, and we find in the record that only two cubic yards of concrete were poured prior to the November 29, 1985 deadline. According to Mr. Whitcher of HPD, two cubic yards was only sufficient for one footing, which was removed, as discussed *supra.*

Upon the basis of our review of the record, we find that petitioner's evidence, in support of its claim that construction was commenced in good faith before the deadline, consists of no more than self-serving affidavits, unsupported by any con-

temporaneous documentary evidence, such as regular progress reports by contractors, engineers and/or architects, bills for supplies and labor, all of which would ordinarily be available to a developer.

It is apparent to this court, that the credible evidence in the record, indicates that one concrete footing was poured two days before the expiration date set forth in the local law. It also is apparent that this single footing was discarded within five days after being poured and the building was erected without any utilization of that footing.

In view of the overwhelming evidence provided by the respondents, discussed *supra,* supported by, *inter alia,* eyewitness affidavits of experienced engineers, coupled with photographs, indicating that petitioner did not commence construction in good faith prior to the deadline, we find that respondent HPD acted rationally in rejecting petitioner's application for partial tax exemption under RPTL 421-a, and therefore, we further find that the IAS court erred in improperly substituting its judgment for that of the HPD *(Matter of Schwartz v Corcoran,* 118 AD2d 355, 361 [1st Dept. 1986]; *Matter of Procaccino v Stewart, supra).*

Repeatedly, the Court of Appeals has stated that "courts should defer to the interpretation given a statute by the agency charged with its enforcement if the interpretation is neither irrational, unreasonable, nor inconsistent with the governing statute *(Matter of Fineway Supermarkets v State Liq. Auth.,* 48 NY2d 464; *Matter of Sigety v Ingraham,* 29 NY2d 110)" *(Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 57 NY2d 588, 597 [1982]; *Matter of Trump-Equitable Fifth Ave. Co. v Gliedman,* 62 NY2d 539, 545 [1984], *supra; Appelbaum v Deutsch,* 66 NY2d 975, 977 [1985]).

We have considered the other contentions of the petitioner, and find them to be without merit.

Accordingly, order, Supreme Court, New York County (Leonard N. Cohen, J.), entered December 5, 1990, which denied the motion of respondents for reargument, *sua sponte* granted respondents leave to renew, granted renewal, and adhered to its prior order and judgment (one paper), entered May 4, 1990, which granted the petition of petitioner, pursuant to CPLR article 78, annulled the determination of Department of Housing Preservation and Development of the City of New York (HPD), dated July 28, 1989, denying petitioner partial tax exemption benefits, pursuant to RPTL 421-a, directed that

HPD accept petitioner's application for tax exemption benefits retroactive to November 27, 1985, and directed the refund to petitioner of $1,338,602.18 in real estate taxes, plus interest, is unanimously reversed, on the law and on the facts, to the extent appealed from, the determination of HPD is reinstated, the petition is denied, and the proceeding is dismissed, with costs. The appeal from the order and judgment (one paper) of the same court and Justice, entered May 4, 1990, is dismissed as superseded by the appeal from the December 5, 1990 order, without costs.

ROSENBERGER, J. P., ELLERIN, WALLACH and SMITH, JJ., concur.

Order, Supreme Court, New York County, entered on December 5, 1990, unanimously reversed, on the law and on the facts, to the extent appealed from, with costs, the determination of the Department of Housing Preservation and Development of the City of New York reinstated, the petition denied and the proceeding dismissed. The appeal from the order and judgment (one paper) of the same court and Justice, entered on May 4, 1990, is dismissed as superseded by the appeal from the aforesaid order, without costs.