■ In the Matter of FRAYDUN MANOCHERIAN, Respondent, v TAX COMMISSION OF THE CITY OF NEW YORK et al., Appellants. —Judgment, Supreme Court, New York County (Stanley Parness, J.), entered February 7, 1991, affirmed for the reasons stated by Parness, J., without costs and without disbursements. Concur—Asch, Kassal and Rubin, JJ.

Sullivan, J. P., and Rosenberger, J., dissent in a memorandum by Sullivan, J. P., as follows: The City appeals from a judgment granting summary judgment eliminating the building portion of the real estate tax assessment for the tax year 1985/86, amounting to $3,425,000, with respect to petitioner's property at 147 East 50th Street, designated as Block 1305, Lot 28, in the Borough of Manhattan. Petitioner had sought the benefit of a "progress exemption" for the year in question for a "new building" in the first year of "the course of construction" under Administrative Code of the City of New York § E17-10.0 (renum § 11-209).

Construction of the building in question, a 29-story apartment house, was completed in 1987. Since petitioner used the foundation poured in 1982, before he redesigned his building as to its use and form from the initial plan for a 45-story office building, he failed to comply with the strict time requirements of the exemption statute, which, insofar as tax year 1985/86 is concerned, required that construction commence after January 5, 1984. Accordingly, I would reverse, deny petitioner's motion for summary judgment and, since the issue, as presented, involves a pure question of law and a motion for summary judgment searches the record *(Tele-Pac, Inc. v Grainger,* 168 AD2d 11, 20, *lv dismissed* 79 NY2d 822), grant judgment to the City determining that petitioner is not entitled to the exemption sought.

On May 12, 1982, petitioner sought and the Department of Buildings (DOB) approved and issued a building permit, pursuant to application No. NB 11/82, for the construction of a 45-

story office building. The next day, May 13, 1982, the Board of Estimate amended the Zoning Resolution to add provisions relating to a Special Midtown District, within which the subject property was located. In accordance with New York City Zoning Resolution § 11-331, unless the foundation is completed before the amendment's effective date, May 13, 1982, petitioner's building permit automatically lapsed and the right to continue construction terminated.

Petitioner sought reinstatement of his permit from the Board of Standards and Appeals (BSA) under section 11-331, which permitted renewal of the permit and a six-month extension to complete the required foundation upon a finding that on the day the permit lapsed, i.e., May 13, 1982, "excavation had been completed and substantial progress made on foundations." On September 14, 1982, the BSA restored the permit and granted petitioner an additional six months to complete foundations. It should be noted that this extension would have permitted petitioner to complete the building's foundation and thereby vest his rights to construct the 45-story office building, the zoning change notwithstanding. As noted, the foundation was poured in 1982.

Despite his right to do so, petitioner did not go forward with the original 45-story development. Instead, he submitted a number of amended plans to the DOB. On October 27, 1982 his architect submitted an amendment, designated as a " 'New Building Application' ", NB 11/82, stipulating that "this amendment is to become a part of the aforesaid original application * * * subject to all the conditions, agreements and statements therein contained", to convert the proposed 45-story building to a 38-story building, with greater plot coverage, to be operated as a transient hotel based on the requirements of the Special Midtown District amendment to the Zoning Resolution. On the same date, the DOB reinstated the permit as amended. On November 4 and 8, 1982, the DOB issued objections to several specifications in the amended plans that did not conform to the zoning regulations.

On January 11, 1983, under an amendment to the original application, petitioner filed updated foundation drawings, which, although recommended for approval that same day, were objected to on February 22, 1983 by the DOB's Manhattan Borough Superintendent because they provided for a floor area in excess of that permitted. After further review, the Borough Superintendent, by letter of March 15, 1983, informed petitioner that since the foundation plans were for a building that did not comply with the Zoning Resolution, the

January 11, 1983 "approval" was revoked, which determination petitioner appealed.

On August 16, 1983, the BSA found that petitioner's plans did not comply with the Zoning Resolution's Special Midtown District amendments, affirmed the Borough Superintendent's determination and denied the appeal. In a subsequent CPLR article 78 proceeding, this court, finding that the BSA's determination was rationally based, rejected petitioner's challenge to the City's disapproval of the non-conforming 38-story building plan *(Matter of Fraydun Enters. v Deutsch,* 115 AD2d 385, *lv denied* 68 NY2d 601). On August 18, 1983, the DOB advised the Borough Superintendent that the foundation completed within the six-month extension* did not conform to the originally filed plans and that any construction then required to support the only building authorized by said plans would contravene the Zoning Resolution amendments, and directed him to notify all affected parties that the permit had lapsed and that all work was to cease forthwith. Petitioner was so notified and given five days to amend his plans and applications to bring the proposed building into full compliance with the Midtown zoning regulations.

On October 3, 1983, petitioner filed an amendment to his original application, NB 11/82, consisting of an "Updated 'New Building Application' and Plans" for a 38-story building, which, on November 2, 1983, was approved. On July 24, 1984, as part of his original application, NB 11/82, petitioner filed yet another amendment, consisting of an "Updated new Building Application" for a 29-story residential building. There were several further amendments, each of which stated that it was "to become a part of the aforesaid original application" and the last of which was filed on July 30, 1985. A temporary certificate of occupancy, specifically referring to the 1982 application, NB 11/82, was issued on October 9, 1985. Construction was completed on December 24, 1987 and a final certificate of occupancy, also referring to the original 1982 application, NB 11/82, issued on January 6, 1988.

In granting summary judgment and awarding petitioner a progress exemption for 1985/86, the IAS Court recognized that the eventually completed 29-story building utilized "in part the foundation initially poured in 1982 for the then contemplated office building." Notwithstanding, the court attributed the delay in constructing a building in conformity

---

* Review of the record yields the conclusion that the completion of the foundation actually occurred between March 15, 1983 and August 18, 1983.

with the site's zoning to "disputes with the building department", which delay "was * * * entirely removed from petitioner's control." Insofar as Administrative Code § 11-209's requirements are concerned, the court held that "construction is deemed to commence when it is for the building for which the assessment exemption is sought". In this case, it found, construction commenced in July 1984 with the issuance of a permit for the foundation and filing of plans for the 29-story apartment building. Thus, it further held, construction was pursuant to that permit "and not under the one which had previously been revoked." In my view, there are several flaws in the court's analysis warranting reversal.

Section 11-209 of the Administrative Code, which affords a limited one-time progress tax exemption for a building for a fixed period after construction has begun, provides, "A building in the course of construction, commenced since the preceding fifth day of January and not ready for occupancy on the fifth day of January following, shall not be assessed unless it shall be ready for occupancy or a part thereof shall be occupied prior to the fifteenth day of April." Thus, as is clear, for petitioner to be entitled to the one-year exemption on January 5, 1985, the applicable taxable status date for the year in question, 1985/86, construction of the subject building should have commenced after January 5, 1984 and the building should not have been ready for occupancy or occupied before April 15, 1985. Since construction was "commenced" in 1982 when the building's concrete foundation was poured, long before January 5, 1984, the statutory period for exemption had already elapsed and petitioner cannot claim an exemption for 1985/86.

As has been held by the Court of Appeals *(Matter of Sutton-53rd Corp. v Tax Commn.,* 7 NY2d 416, 420, *rearg denied* 8 NY2d 785), "construction is deemed to have commenced" with the "introduction and use for construction purposes of materials foreign to the soil which eventually become a part of the completed improvement". Thus, in practical terms, the time of commencement is fixed with the pouring of the concrete, which, when "set in place," "eventually bec[omes] an integral part of the completed building." *(Supra,* at 421; *see also, Matter of Gramercy N. Assocs. v Biderman,* 169 AD2d 345, 347, *lv denied* 78 NY2d 863.)* Since construction of the building commenced after January 5, 1982, petitioner was eligible, if the other qualifications were met, for the progress tax exemption only for the tax year 1983/84.

Petitioner claims entitlement to a 1985/86 exemption be-

cause he abandoned his original plan to construct a 45-story office building and instead built a 29-story residential building. The same argument was rejected in *Kennedy Plaza Assocs. v Tax Commn.* (No. CE 399/69, Sup Ct, Queens County, May 31, 1973, *affd sub nom. Matter of Kennedy Plaza Assocs. v Finance Adm'r*, 45 AD2d 819). There, numerous changes in the plans for the building's size and use were made after the application to construct a new building was filed. The foundation was poured in 1966. At sometime before June 1968, the new owner purchased the building and filed for construction of a six-floor class A multiple dwelling, but without any change in the foundation. The building was completed after the 1968 taxable status date and during 1969. Citing *Matter of Sutton-53rd Corp. v Tax Commn.* (7 NY2d 416, *supra*), and adopting therefrom as its definition of the commencement of construction, i.e., "the introduction of material foreign to the soil, such as a concrete foundation", *Kennedy* held that petitioner was not entitled to a 1969/70 progress exemption because "the subject premises were in the course of construction prior to" the 1968 taxable status date *(Kennedy Plaza Assocs. v Tax Commn., supra,* slip opn, at 4). In language particularly appropriate here, the court noted, "It does not matter that the foundation as originally poured was intended for a different structure. It is more significant that a part of the original foundation was used for the present structure." *(Supra,* at 3-4.)

In the instant case, there can be no doubt that construction of the building finally completed in 1987 was based on the continuation of the plans originally filed on May 12, 1982 and amended frequently thereafter. Other than the original 1982 filing, a "new building" application was never filed for the 29-story building eventually completed; with each set of revised plans, petitioner merely filed amendments to the original application, stipulating, in accordance with Administrative Code § 27-154 (formerly § C26-109.8), that the "amendment is to become a part of the aforesaid original application and subject to all the conditions, agreements and statements therein contained."

Nor, since petitioner concedes that the original foundation was used, can there be any doubt that the pouring of a foundation in 1982 constituted the commencement of construction of the completed 29-story building. The purpose for which the foundation was poured is irrelevant; it is the actual use of the foundation as part of the completed structure that is controlling *(Matter of Sutton-53rd Corp. v Tax Commn., supra; People ex rel. Shelton Holding Corp. v Goldfogle,* 220 App Div

451). The exemption rests exclusively on the fact of construction and the date of its commencement. Thus, revisions of the original plan as to the nature of the completed structure are immaterial. Nor is there any merit to the argument that the use and dimensions of the building in existence at the time the exemption is sought govern the commencement of construction date. Settled law dictates that for purposes of the tax exemption, the eventually built 29-story residential building cannot be treated as a different building from the one originally proposed; nor, as the IAS Court held, can the commencement of construction date be predicated on the date of the filing of the amendment seeking permission to construct such a building.

*Matter of 5-7 Park Ave. Corp. v Tax Commn.* (9 AD2d 106), relied upon by petitioner, was decided prior to *Sutton-53rd Corp. (supra)* and is, in any event, inapposite. The opinion itself makes no reference to the question of when construction commences. The issue there was whether the structure was an alteration of a building already in existence or a "new building within the sense and intendment of the statute" *(supra,* at 108) so as to warrant a progress exemption for the year in question. As the record of the case shows, a new building had been constructed with independent footings and foundations on the site, which, at the time construction was commenced, had its own official tax lot designation. The owner's architect testified that it was a "complete building" with an elevator and apartments, although it did not have its own interior stairways, standpipe system, water supply or sewer connections to the street mains. This Court held that the statute "does not by its provisions limit the exemption to detached and totally independent structures" *(supra,* at 109) and found that the structure was a new building entitled to the statutory exemption. Thus, *5-7 Park Ave.* is neither relevant nor persuasive on the issue of the commencement date of construction for purposes of the exemption.

Courts have consistently rejected attempts to obtain a tax advantage by stretching the limited exemption provided by Administrative Code § 11-209 beyond the year specified. *(See, e.g., Matter of Oakwood In Forest Hills v Tax Commn.,* 30 AD2d 863, *affd* 23 NY2d 949; *Matter of 440 E. 62nd St. Co. v Tax Commn.,* 15 NY2d 655; *Matter of Silmar Realty Corp. v Boyland,* NYLJ, Apr. 1, 1968, at 18, col 7, *affd* 33 AD2d 893.) Tax exemption statutes must be strictly construed against the property holder; exemption, if not plainly expressed, is not to

be presumed. *(Matter of City of Lackawanna v State Bd. of Equalization & Assessment,* 16 NY2d 222.)

Accordingly, the judgment eliminating the building component of the 1985/86 real property tax assessment for Block 1305, Lot 28, in the Borough of Manhattan, should be reversed and a determination made that petitioner is not entitled to said exemption.