## COLLIER CARBON & CHEMICAL CORPORATION v. DEPARTMENT OF REVENUE

Preston C. Hiefield, Jr., and David R. Williams, Williams, Montague, Stark, Hiefield & Norville, Portland, represented plaintiff.

Glen V. Sorensen, Assistant Attorney General, Salem, represented defendant.

Decision for plaintiff rendered January 5, 1972.

CARLISLE B. ROBERTS, Judge.

The Department of Revenue's Order No. VL

[ 1 ]

70-193 modified Multnomah County's 1969-1970 assessment of real property improvements and personal property related thereto and the plaintiff appeals therefrom. The matter turns on the application of ORS 307.330, exempting certain commercial facilities under construction. Plaintiff prays that this court direct the Multnomah County Department of Assessment and Taxation to cancel its assessment and to order refund of the real and personal property taxes paid under protest. The real property involved is described upon the assessment roll as Tax Lot 24, Sec 26, 2 N, 1 W, in the City of Portland, County of Multnomah, State of Oregon, comprising approximately 25 acres.

In February 1968, the plaintiff's real property, now known as its "Rivergate Terminal," was an unimproved site adjacent to the Willamette River. In that month plaintiff entered into a construction contract under which the General Construction Company of Portland undertook to erect a specialized structure designed for the receiving, storage, handling and transshipment of prilled urea, a product of natural gas used as fertilizer by agriculturists. The improvements include a dock in the river with a causeway to the land, with a crane and clamshell bucket and a hopper located on the dock. A conveyor gallery, enclosing a conveyor belt system and scales for weighing urea on the moving belt, connects the dock with a large storage building which has a conveyor under its ridgepole capable of distributing the material at any point in the warehouse. The stored urea can then be dropped through openings in the floor of the warehouse to another conveyor belt which moves through a tunnel from the storage building to a smaller building designated as the "screening and bagging plant." Through the use of a continuous

bucket elevator, the urea is then raised to the top of the bagging plant where it is screened by size and then carried by other conveyor belts or gravity for bulk loading into trucks or railroad cars or into bags for domestic or foreign sales.

The urea is received from ships or barges in the form of small pellets, designed to flow easily through the ultimate customer's agricultural machinery. Since it is hygroscopic, it is essential that the urea be protected from absorption of moisture. Consequently, the specifications for the improvements required complete protection from unfavorable weather and, before the completion of the project, it was found necessary to add humidity controls within the storage building, involving two gas furnaces, ducts, fans and electrical controls, this work being done after January 1, 1969.

The contract supervisor for General Construction Company testified that the contract was a "turn-key" project; i.e., one in which the contractor designs and constructs the facility and turns the completed project over to the owner, ready for use. The plaintiff's total cost for the facility was to be approximately $1,700,000. All but $50,000 of the work contemplated was completed by December 31, 1968. As of that date, the dock, causeway, catwalks, dolphins, the conveyor gallery and belts from dock to storage warehouse, the storage warehouse, the bagging plant, the railroad siding and the blacktopping of roads and areas adjacent to the plant appeared to have been completed and the property was deemed taxable by the county on January 1, 1969, after exemption during the previous year as a commercial facility under construction. Upon appeal by the plaintiff to the Department of Revenue, it was the opinion of the Director that, as of January 1, 1969, the main warehouse structure still qualified for exemption pur-

suant to ORS 307.330 but the remainder of the plant did not. Machinery or equipment located at the construction site, installed or to be affixed to the main warehouse, was exempted, accordingly, pursuant to subsection (2) of ORS 307.330, but the remainder of such personal property was placed upon the tax rolls. The real and personal property taxes were paid under protest and the appeal to this court followed.

After January 1, 1969, the contractor still had to install and test the humidity control system in the warehouse, install additional conveyors and bagging equipment in the bagging and screening building, furnish and install the metal hopper and clamshell bucket for bulk unloading on the dock of urea brought by ocean-going vessels, repair leaks in the two buildings and in the conveyor tunnel connecting them, install a car-puller device, dig drywells and install storm sewer lines which were not originally contemplated but found necessary by county officials, do the incidental electrical work involved in the installations in the bagging plant, on the dock and in connection with the humidity controls and the like. The water and sewer lines, which had been installed insofar as the plant was concerned, could not be hooked on to the City of Portland's system until the city had extended its sewer and water mains two miles. This was accomplished June 4, 1969.

The pertinent statute, ORS 307.330, reads as follows:

"(1) Except for property centrally assessed by the Department of Revenue, each new building or structure or addition to an existing building or structure is exempt from taxation for each year of not more than two consecutive years if the building, structure or addition:

"(a) Is in the process of construction on January 1;

"(b)  Is not in use or occupancy on January 1;

"(c)  Has not been in use or occupancy at any time prior to such January 1 date;

"(d)  Is being constructed in furtherance of the production of income; and

"(e)  Is, in the case of nonmanufacturing facilities, first used or occupied not less than one year from the time construction commences. Construction shall not be deemed to have commenced until after demolition, if any, is completed.

"(2)  If the property otherwise qualifies for exemption under this section and ORS 307.340, the exemption shall likewise apply to any machinery or equipment located at the construction site which is or will be installed in or affixed to such building, structure or addition."

Plaintiff contends that all the conditions of the statute were met by it as of January 1, 1969, and the exemption should follow; the defendant argues that only the storage warehouse was properly exempt and that the other elements of the structure were essentially completed.

ORS 307.330 is an exemption statute and must be strictly construed. The apprehensions of the tax administrators in cases such as this one are easily understood and appreciated. The defendant has cited *Oakwood in Forest Hills, Inc. v. Tax Commission*, 30 NY App Div2d 863, 293 NYS2d 58, 60 (1968), where the court, construing an "occupancy" statute, said:

"* * * The underlying test, in accordance with the intent of the statute, is whether the construction of the building has reached the point where an economically viable structure is in existence as of the critical cut-off date. If the statute were not so construed, it would be possible for a situation to arise where it would be economically beneficial to the owner of a building to forego rents for a month or two and thereby avoid property tax for a full year. * * *"

Certainly the plaintiff in the present case could not avoid assessment as of January 1, 1969, by showing (as it did) that the blacktop paving required modification, that tile had not been laid in the company offices which were located in the bagging and screening building and that the plant's electric sign, bearing the company's name, had not been erected. However, the testimony was undisputed that the structure was not capable of serving its intended function on January 1, 1969, and that, when it became known in February 1969 that the steamship Nordfelds would reach the new dock sometime in March 1969, the plaintiff's officers met with the General Construction Company to determine what part of the uncompleted work must be finished to insure that this first load of urea could be transferred safely from the ship's holds to the storage warehouse. The court finds that construction work had to be completed before it was possible to unload the urea from the freighter, to weigh it, and to place it in the storage warehouse under proper humidification controls.

The statute gives exemption to each new building or *structure* which is in the process of construction on January 1 and is not in *use* or occupancy on January 1. (There is no issue in the present case as to other elements of ORS 307.330.)

The use of the word "structure" in the disjunctive with the word "building" is instructive. While a building is always a structure, all structures are not buildings. *Katsoff v. Lucertini,* 141 Conn 74, 103 A2d 812, 814 (1954). "The word 'structure' is one of the broadest words in the English language and is very comprehensive." *United States ex rel Murphy v. Warden of Clinton Prison,* 29 F Supp 486, 492 (ND NY 1939). Among the dictionary definitions is: "Anything

composed of parts arranged together in some way; an organization." "A complex system considered from the point of view of the whole rather than of any single part." An important connotation of "structure" is a concept of a number of elements or components being viewed as a whole, a universe, an ensemble. The completion of a particular building may not signify the completion of the "structure" contemplated by the taxpayer in a particular instance. In this light, and in connection with the statutory words "use or occupancy" "in furtherance of the production of income," a legislative intent can be found that the property considered in the present case should not be assessed for the tax year 1969-1970. The legislature, in using "structure," is deemed to have contemplated the situation in which a plant, designed for a very specific use and not adaptable for any other purpose, could be regarded as useless until the whole structure is basically operable. This is the situation in the present case.

It is recognized that cases of the kind considered here will give rise to every possible difference in degree, and the tax administrator's task is a difficult one. However, in this instance, the court finds that essential construction activity was in process on January 1, 1969, and that no use could be made of the structure here considered for any purpose whatsoever on that date and for a substantial period thereafter. The defendant's order must be set aside. The Department of Assessment and Taxation of Multnomah County should correct its rolls to show an exemption under ORS 307.330 for all the real and personal property in dispute. Refund of taxes shall be made by the Multnomah County Commissioners pursuant to ORS 311.806.