MULTNOMAH COUNTY,
a home rule subdivision of the
State of Oregon,
by and through its
Tax Collector, Janice Druian,
and its Tax Assessor Robert Ellis

*v.*

DEPARTMENT OF REVENUE
(Uptown Heights Associates)

*and*

SEATTLE-FIRST NATIONAL BANK,
a national banking association,

*Intervenor*

(TC 3571)

Sandra N. Duffy, Assistant County Counsel, Multnomah County, Portland, represented plaintiff.

No appearance by defendant.

Rodney E. Lewis, Jr. and Carol V. Lavine, Davis Wright Tremaine, Portland, represented intervenor.

Decision for intervenor rendered September 2, 1994.

### CARL N. BYERS, Judge.

This matter is before the court on plaintiffs' Motion for Summary Judgment. Intervenor has opposed the motion.[1] The parties have stipulated the material facts and the court's ruling on the legal issues will be determinative. Of concern is whether intervenor's apartment project qualifies for property tax exemption as a commercial property under construction.

Intervenor's predecessor in interest constructed an apartment project on a steep hillside. The site is on a rocky promontory in the Northwest Portland Hills near the downtown business district. The sole access to the property is by a steep (21-degree) concrete bridge/roadway from West Burnside Street. The site contains 16 separate apartment buildings and parking areas. Since the time involved in construction is one of the important issues, the following chronology is set forth:

| | |
|---|---|
| Late June, 1989 | Clearing and grading of site begun. |
| July 3, 1989 | Entrance excavated, holes drilled and steel rods grouted into rock as anchors for under-pinnings of the bridge/roadway. |
| July 7, 1989 | Concrete poured to hold the anchors. |

---

[1] Defendant filed an answer, but did not otherwise participate in the case. Uptown Heights Associates initially moved to intervene, but later withdrew that motion by letter dated March 21, 1994.

| | |
|---|---|
| July 12, 1989 | The first portion of the concrete bridge/roadway abutment poured. |
| July 26, 1989 | The remainder of the concrete bridge/roadway poured. |
| August 7, 1989 | Building permits for construction of the apartment buildings issued. |
| August 16, 1989 | The building inspector inspected the footing forms for two buildings. |
| July 6, 1990 | City of Portland issued seventeen separate certificates of occupancy, one for each apartment building and one for the bridge/roadway. |
| July 8, 1990 | The first apartment units occupied. |

None of the units were in use or occupied on or before January 1, 1990. The apartments were constructed in furtherance of the production of income.

The relevant portions of ORS 307.330[2] provide as follows:

"(1)   * * * each new building or structure or addition to an existing building or structure is exempt from taxation for each year of not more than two consecutive years if the building, structure or addition:

"(a)   Is in the process of construction on January 1;

"(b)   Is not in use or occupancy on January 1;

"(c)   Has not been in use or occupancy at any time prior to such January 1 date;

"(d)   Is being constructed in furtherance of the production of income; and

"(e)   Is, in the case of nonmanufacturing facilities, to be first used or occupied not less than one year from the time construction commences. Construction shall not be deemed to have commenced until after demolition, if any, is completed."

---

[2] All citations are to the 1989 Replacement Part.

Intervenor maintains that the only issue before the court is whether construction of the property took one year or more. Intervenor relies on the fact that defendant's opinion and order indicates "there appears to be no dispute between the parties as to the Uptown Heights Apartments satisfying the first four of the five criteria." However, plaintiffs do not agree and challenge the claimed exemption on additional grounds. ORS 305.425 provides that:

> "All proceedings before the court shall be original, independent proceedings and shall be tried without a jury and de novo."

Accordingly, the court will consider all points of disagreement between the parties which relate to issues raised before the department in the administrative hearing.

One of the first issues to be addressed is the status of the bridge/roadway. There is no question that its construction was necessary to access the site. Plaintiffs contend that the structure is more roadway than bridge because only a short portion of it spans a culvert. Plaintiffs assert that the construction of the bridge/roadway was just site preparation and as such should be assessed as part of the land value. Plaintiffs point to OAR 150-307.330(1)(a) as clarifying that only improvements, not site improvements, are exempt.

■ The court finds the bridge/roadway is a "related improvement" which qualifies as exempt under ORS 307.330. The administrative rule gives examples of related improvements "such as ramps, loading docks, wharfs, and paved areas used for parking or storage." OAR 150-307.330(1)(a). The nature of the bridge/roadway is similar to that of a ramp for a manufacturer. A ramp may be used to load and unload materials used for manufacturing. The bridge/roadway is to provide tenants access to the apartments. The construction involved in the bridge/roadway is more than just site preparation. The concrete structures, including the pavement, are significant and are not inseparably connected with the land. *See* OAR 150-307.010(1).

The fundamental point of dispute between the parties is whether the subject improvements must be viewed as an integrated project or as individual buildings. Intervenor contends that, due to the unique location and nature of the

development, the subject is an integrated project which could not be used until all aspects of it were completed. In opposition, plaintiffs maintain that the apartments are individual buildings separate from each other and the bridge/roadway. Both parties are partially correct.

■ The exemption is provided for each building or structure. This suggests that each building or structure must separately and independently meet the tests involved. However, where the nature of the building or the structure is such that it is interdependent with another building or structure and requires completion of the whole to be usable, then the test is applied to the interdependent parts as a whole.

> "The legislature, in using 'structure,' is deemed to have contemplated the situation in which a plant, designed for a very specific use and not adaptable for any other purpose, could be regarded as useless until the whole structure is basically operable." *Collier Carbon v. Dept. of Rev.*, 5 OTR 7 (1972).

■ The court finds that the individual apartment buildings are not interdependent with each other but can be rented separately. Consequently, there can be no tacking or adding of one building's construction time to that of another. However, none of the apartment buildings could be used without the bridge/roadway. Consequently, the court finds that the measure of construction time for each apartment building will begin with construction of the bridge/roadway and end when each building is ready for occupancy. The parties have stipulated that bridge/roadway was started July 3, 1989, the apartments were not completed until July 6, 1990, and actual occupancy started July 8, 1990. Therefore, all of the subject apartment buildings are exempt.

Plaintiffs argue that if the bridge/roadway is considered a structure under ORS 307.330, its construction was completed and it was occupied before July 6, 1990. Plaintiffs construe the terms "occupied" and "used" too broadly. Use of the bridge for construction is not the same as use of the bridge to produce income. It is common, particularly with large projects, to use portions of the construction to assist with the remainder of the construction. For example, in constructing multistory skyscrapers, the lower floors are often used for storage of construction materials and access to

the upper floors during the process of construction of the entire building. Such use is not occupancy or use within the meaning of the statute.

In summary, the court finds that the subject property was in the process of construction on January 1, 1990, was not in use or occupancy on or before January 1, 1990, was being constructed in the furtherance of the production of income, and was first used or occupied not less than one year from the time construction commenced. Department's Opinion and Order No. 90-4202 must be sustained. Now, therefore,

IT IS ORDERED that plaintiffs' Motion for Summary Judgment is denied, and

IT IS FURTHER ORDERED that judgment be entered in favor of intervenor against plaintiffs. Costs to neither party.