MULTNOMAH COUNTY,
a home rule subdivision of the
State of Oregon,
by and through its
Tax Collector, Janice Druian,
and its Tax Assessor, Robert Ellis

*v.*

DEPARTMENT OF REVENUE
*and*

CORNERSTONE-COLUMBIA
DEVELOPMENT COMPANY,
Olympia & York Properties (Portland) Company,
and Pioneer Place Limited Partnership/
Portland Development Commission,
*Intervenors*

(TC 3626)

Sandra Duffy, Assistant County Counsel, Portland, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Department of Justice, represented defendant.

Marc K. Sellers, Schwabe, Williamson & Wyatt, Portland, represented intervenors.

Decision for plaintiff rendered February 16, 1995.

**CARL N. BYERS, Judge.**

This matter is before the court on plaintiffs' motion for summary judgment and intervenors' cross-motion for summary judgment. The parties stipulated the facts and submitted written memoranda. The controversy centers on the meaning of ORS 307.330, which grants a property tax exemption to commercial facilities under construction. Plaintiffs appeal from department's opinion and order allowing the exemptions.

Plaintiffs' five claims involve three separate properties. The court will outline each project's facts; discuss the applicable statutes, administrative rules and cases; and then apply its legal analysis to each claim.

## CCDC PROJECT

Cornerstone-Columbia Development Company (CCDC) improved a 3.28-acre parcel with a four-story building containing 108 rental housing units, approximately 6,305 square feet of ground floor commercial space, two levels of parking (302 spaces), and 7,730 square feet of restaurant space. One level of the parking structure was for customers and visitors, the second level containing 136 parking spaces was private parking reserved for the residents. The parking areas have different accesses and no vehicular connection between the two levels.

(*First Claim*) Construction of the project commenced October 1, 1989. On or about October 27, 1989, CCDC filed

an application for cancellation of assessment for the 1990-91 tax year. The application indicated that the primary purpose of the structure was for parking, apartments, retail and restaurant. On January 1, 1990, the structure was only a "minimally completed parking garage." On July 1, 1990, CCDC opened the public portion of the parking facility for use less than one year after construction commenced. On September 27, 1990, the assessor denied the application for cancellation because it did not comply with the requirement of no use or occupancy within one year of the start of construction.

(*Second Claim*) On March 29, 1991, CCDC filed two applications for cancellation of assessment for the same project for the 1991-92 tax year. One application sought cancellation of the assessment for the apartments and private parking area and one application sought cancellation of the restaurant area. No application was made for the commercial parking or retail space. The retail space, apartments and apartment parking were not completed or used by January 1, 1991. By letter dated October 16, 1991, the county denied the applications for cancellation of assessments.

## O&Y PROJECT

Olympia & York Properties (Portland) Company (O&Y) developed a project, called the Essex House, which had four levels of subsurface parking, a street level area for retail space and 156 above-street apartments. The two lower levels of parking were connected to and exclusively served the adjacent KOIN office complex. There is no vehicular connection between the KOIN Center parking facilities and the two levels of parking for the apartments and retail area.

(*Third Claim*) On March 29, 1991, O&Y filed two applications for cancellation of assessment for the 1991-92 tax year. One application was for the two lower levels of parking and the other application was for the retail area, apartments and two levels of underground parking. Construction of the project started November 6, 1990, and the estimated completion date was February 1992. The two levels of parking for KOIN opened for use within one year after construction. On October 16, 1991, the county denied O&Y's request for cancellation. The apartment, retail and

related parking areas were still under construction after one year of commencement of construction and were not in use on January 1, 1991.

(*Fourth Claim*) On February 3, 1992, O&Y filed an application for cancellation of assessment for the 1992-93 tax year. This application covered the retail area, apartments and the two upper levels of parking. By letter dated October 16, 1992, the assessor denied this application.

## PDC PROJECT

(*Fifth Claim*) The Portland Development Commission (PDC), an agency of the City of Portland, owned six lots on Block 51, Portland Addition. The subject improvements on that property consist of an above-ground parking structure, street level commercial retail space, and below-ground parking. The latter is used solely as parking for Pioneer Tower, which is on an adjacent block. The above-ground parking is public parking intended to serve shoppers at the structure's retail area and Pioneer Place Shopping Center.

Construction of the project commenced on November 12, 1988. On March 20, 1989, PDC applied for cancellation. This was granted on November 17, 1989. However, the property was already exempt as publicly-owned property. PDC later leased the retail area and below-ground parking to Pioneer Place Limited Partnership. On March 28, 1990, application was made for cancellation of exemption for the nonexempt portions, *i.e.*, the retail and underground parking area, for the January 1, 1990, assessment date. The City of Portland issued a certificate of substantial compliance for the retail space on October 12, 1990, and a certificate of occupancy for the garage and retail space on July 18, 1990. By letter dated September 27, 1990, the assessor denied the application because the above-ground parking lot was in use by January 1, 1990.

## ISSUES

The issues raised by plaintiffs' complaint are: (1) whether use or occupancy of a portion of a nonindustrial building or structure within one year of commencement of construction negates the exemption even though the entire

building or structure is not complete; and, (2) whether portions of a building or structure can be separated under the statute so that one portion qualifies and the other portion does not.

## LAW

The relevant portion of ORS 307.330[1] provides:

"[E]ach new building or structure or addition to an existing building or structure is exempt from taxation for each year of not more than two consecutive years if the building, structure or addition:

"(a)  Is in the process of construction on January 1;

"(b)  Is not in use or occupancy on January 1;

"(c)  Has not been in use or occupancy at any time prior to such January 1 date;

"(d)  Is being constructed in furtherance of the production of income; and

"(e)  Is, in the case of nonmanufacturing facilities, to be first used or occupied not less than one year from the time construction commences."

Property qualifying for this exemption is placed on the tax roll, but the assessment is canceled upon receipt of documentary proof that the property is exempt. Taxpayers must file an Application For Cancellation Of Assessment to obtain the exemption. If the assessment is cancelled, but the property later becomes disqualified, the cancellation is abated and the property is restored to the tax roll. ORS 307.340.

Defendant has adopted an administrative rule which construes the statute. OAR 150-307.330 provides that the term "building or structure" includes all improvements such as "ramps, loading docks, wharfs, and paved areas used for parking or storage * * *." OAR 150-307.330(1)(a). Also, additions include any "enlargement" or a "modification" that changes the "nature of the building or structure." OAR 150-307.330(1)(b).

---

[1] Citations to Oregon Revised Statutes are to the 1989 Replacement Part unless otherwise noted.

The administrative rule also provides:

"No exemption may be allowed if use or occupancy is made of the building, structure or addition, *or any part thereof,* on or before January 1 of any calendar year in which the exemption is claimed. Use or occupancy refers to that use or occupancy for which the building is intended upon completion." OAR 150-307.330(2)(d). (Emphasis added.)

In *Collier Carbon v. Dept. of Rev.*, 5 OTR 1 (1972), *aff'd* 263 Or 414, 502 P2d 595 (1992), this court considered a specialized structure designed to receive, store and handle transshipment of fertilizer product. The court found that the legislature regarded an industrial plant designed for specific use and not adaptable to any other purpose as "useless" until the whole structure is basically operable.[2] 5 OTR at 7. In *Philips Industries v. Dept. of Rev.*, 5 OTR 462 (1974), the taxpayer constructed a large building to be used for manufacturing of mobile homes. The building was divided into separate "plants" to be used for warehouse, office space and manufacturing. A small portion of the warehouse and office space were being used on the assessment date.

In *Philips Industries* the court held that a building must be operable for the purpose of income production to be considered ready for use or occupancy under the statute. The court noted that the intent of the developer is significant in determining whether property is used or occupied. The court also stated:

"Implicit in the statute is the notion that the tax exemption is allowable only during that period (or two consecutive years thereof) during which the undertaking is unable to produce that income which, eventually, the entrepreneur expects to use to pay expenses, including the property taxes, and to make a profit." 5 OTR at 469.

For reasons that are not clear, the court found the department's administrative rule unclear. The court allowed severance of portions of the single building based upon its intended functions. The court disallowed the exemption for the warehouse space and office space because portions of each were being used on the assessment date. However, the

---

[2] The court has also considered the statute in *Allen v. Dept. of Rev.*, 5 OTR 185 (1973), and *Multnomah Co. v. Dept. of Rev.*, 5 OTR 437 (1974), but neither of those cases are particularly enlightening here.

court allowed the exemption for that portion of the building to be used for manufacturing but was not complete and therefore not in use or occupied on the assessment date. 5 OTR at 474.

Plaintiffs argue that *Philips Industries* should be overruled because the statute does not authorize severability. Plaintiffs also argue that exemptions are strictly construed and that use of any portion of the building or structure terminates its eligibility for exemption.

Intervenors argue that some of the structures in this case are built in air space and are considered separate, and that different functions should be treated separately. Intervenors believe the statute recognizes multiple uses may be made of a single property. Intervenors even contend they divided their respective properties "into severable components on a functional basis" in reliance upon ORS 307.330.

## ANALYSIS

Whenever addressing an issue of statutory construction, it is well to examine the foundational rules. The duty of the court is to first seek the intent of the legislature. ORS 174.020. To do so, the court studies the text of the statute itself. *Southern Pacific Trans. Co. v. Dept. of Rev.*, 316 Or 495, 498, 852 P2d 197 (1993), citing *State v. Trenary*, 316 Or 172, 175, 850 P2d 356 (1993). The words of the statute are to be read and interpreted in the context of the statute. Only if the legislative intent is not clear from the words in context may the court consider legislative history. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 859 P2d, 1143 (1993). It is also helpful in this case to remember that tax exemption statutes are strictly but reasonably construed. *Eman. Luth. Char. Bd. v. Dept. of Rev.*, 263 Or 287, 502 P2d 251 (1972).

ORS 307.330 exempts "buildings" and "structures" and "additions" to existing buildings and structures. The exemption is allowed only for buildings and structures under construction for not less than one year and is limited to a two-year period. Also, the exemptions are not provided for in increments, but apply to entire buildings or structures. In short, the statute does not establish a finely-tuned partnership between government and private enterprise, but a basic benefit with large and simple parameters.

Essentially, intervenors argue that portions of a structure are really separate parts. However, it is well to remember that in making determinations like this the effect can cut both ways. That is, one taxpayer may want a portion to be considered an integral part of the structure so the project can qualify under the time limitation (*see Multnomah County v. Dept. of Rev.*, 13 OTR 147 (1994)). Another taxpayer may want a portion to be considered separately so the project can qualify under the time limitation. The court's determination must be based upon the legislative intent in enacting the exemption.

■　　　The *Philips Industries* case indicates that the exemption is available only during the time the building or structure is unable to produce income. However, that does not mean that a building or structure is entitled to exemption because it does not yet produce income. Any use or occupancy consistent with the intended design or purpose of the building or structure will end the qualifying period.

■　　　There is no basis in ORS 307.330 for severing parts of the same building or structure based on function. Certainly nothing in the language implies that portions of a building may be exempt because of different functions within the building. Likewise, logic does not support such a position. It would be inconsistent to exempt portions of a mixed-use building but not portions of a single-use building. Under intervenors' theory, a 10-story office building could obtain exemption for the seven floors that are incomplete even though three floors are complete and used for retail stores. On the other hand, if all 10 floors were designed for use as offices and a portion of the completed first floor is used as office space, none of the building would be exempt.

■　　　To the extent that *Philips Industries* permits treat-'ing portions of the same building or structure as if they were separate buildings or structures, it is overruled. By this order, the court validates defendant's administrative rule which indicates that use of any part of a building or structure will disqualify the whole. This is consistent with the court's view that the exemption is not a finely adjusted economic tool.

## FINDINGS

For the CDC project, the parties stipulated that the public parking area was opened within one year and therefore used within one year of construction. This use disqualified the project.

For the second year, intervenors filed separate applications for cancellation treating the restaurant as a separate building or structure. However, if the restaurant was a separate building, it was not under construction for one year. If it was not a separate building, use of the public parking disqualified the whole project including the restaurant.

In considering the O&Y (Essex House) project, the court notes that intervenors make no claim that the two lower parking levels was a separate structure from the other two levels of parking. The fact that the two lower levels used for the KOIN office complex had no vehicular connection with the residential parking area is not significant.

In examining the PDC project, the court finds nothing in the facts to indicate that separate structures were involved. Accordingly, use of the public parking within the one year disqualified the entire project.

Based on the above, the court finds that plaintiffs are entitled to summary judgment. Now therefore,

IT IS ORDERED that plaintiffs' Motion for Summary Judgment is granted; and

IT IS FURTHER ORDERED that intervenors' Motion for Summary Judgment is denied. Plaintiffs to recover costs and disbursements.