IN THE TAX COURT OF THE
STATE OF OREGON

LINN COUNTY ASSESSOR

*v.*

DEPARTMENT OF REVENUE
*and*

DAYTON HUDSON CORPORATION,
*Intervenor*
(TC 4122)

H. Andrew Clark, Civil Deputy District Attorney, Albany, represented Plaintiff (taxpayer).

Marilyn J. Harbor, Assistant Attorney General, Department of Justice, Salem, filed an answer on behalf of Defendant (department) but did not argue the cause at trial.

George C. Mastrodonato, Lane Powell, et al, Olympia; and Deanna D. Nebert, McEwen, Gisvold, Rankin, Carter & Streinz, Portland, represented Intervenor.

Decision for Intervenor rendered February 9, 1998.

### CARL N. BYERS, Judge.

Plaintiff, Linn County, (county) appeals from an Opinion and Order of the Department of Revenue (department) which determined that Intervenor (Target) qualified for a construction work-in-progress property tax exemption for the 1996-97 tax year. As a result of that determination, the department concluded that Target's first year of eligibility for an enterprise zone exemption for the same property was the 1997-98 tax year.

The county's appeal alleges that the structure does not qualify for the construction work-in-progress exemption because: (1) The building was complete as of July 1, 1996, or

(2) Target used or occupied the building on or before July 1, 1996. Either of such conditions would disqualify the property for the exemption. Target intervened and defended at trial.

## FACTS

Target is a division of Dayton Hudson Corporation, a large national retail chain. Target supplies products to its stores through regional distribution centers, of which the subject property is one. Located in Albany, the center's 105 acre site provides parking for over 200 truck trailers in addition to employee parking. The center is an enormous building of approximately 616,000 square feet separated into two large wings, one for receiving and one for shipping. It services 39 Target stores using a highly automated conveyor system which reads computerized bar codes then sorts and distributes boxes to specific shipping lines. In addition to the large area taken up by the conveyor system, there are areas for music and movies, a repacking or value-added area, and a central reserve storage. The center also contains administrative offices, training areas, break rooms, computer rooms, and restrooms.

Intervenor emphasizes that a distribution center is more than just a warehouse. It is a systemized approach for sorting and distributing goods, including, to some degree, repackaging. The facility's primary purpose is not for storage but for distribution. Over 60 percent of the goods that flow through the center are shipped out the same day they are received. This point is emphasized because the size, complexity and level of technology involved requires significant computer testing and employee training before the system can be used.

Due to the nature of its operations, the center was required to select a fixed completion date in order to coordinate shipping and receiving with other distribution centers. The date for the subject property was July 21, 1996. One of the Target executives testified that they are "not allowed" to miss such dates. As of July 1, 1996, the administrative offices, computer room, and restrooms were complete. However, yet to be installed was one of four air handlers for the HVAC system, certain lights, eight dock doors, some door

hardware, radiant heaters, and some steel railings on the mezzanine.

There were also problems with the fire suppression system. The pumps had not been wired for power and, although the fire-alarm system was installed, it was not operational because the installing subcontractor had made numerous errors. As a result, the fire marshal would not issue an occupancy permit. Target hired a new subcontractor to correct the problems with the fire system. Target also required all contractors to work overtime and on weekends to finish the center by the predetermined completion date. On July 19, two days before the "fixed" completion date, the fire-alarm system was finally approved as operational.

## ISSUE

Did the subject property qualify for property tax exemption as construction work-in-progress under ORS 307.330?[1]

## ANALYSIS

The property tax exemption in question is provided for by ORS 307.330, which reads, in part:

"(1) Except for property centrally assessed by the Department of Revenue, each new building or structure or addition to an existing building or structure is exempt from taxation for each tax year of not more than two consecutive years if the building, structure or addition:

"(a) Is in the process of construction on July 1;

"(b) Is not in use or occupancy on July 1;

"(c) Has not been in use or occupancy at any time prior to such July 1 date[.]

"* * * * *

"(2) If the property otherwise qualifies for exemption under this section and ORS 307.340, the exemption shall likewise apply to any machinery or equipment located at the construction site which is or will be installed in or affixed to such building, structure or addition."

_____

[1] All references to the Oregon Revised Statutes are to 1995.

■    This statute provides a two-part test: (1) whether construction was complete, or (2) whether the building was used or occupied on or before July 1.

■    The county contends that the building was essentially complete as of July 1. However, as indicated above, the contractor was still in the process of installing the HVAC system, doors, lights, and hardware. The fire-alarm system was not operational and the fire marshal would not issue a permit allowing the building to be used. The conveyor system was still being installed and tested. In short, construction of the distribution center was still in process.

It is worth noting that Target did not intentionally delay completion in order to obtain the property tax exemption. To the contrary, delays due to heavy rain early in the project alarmed the project manager that the center might not be ready for the July 21 start date. The company had never missed an opening deadline. It was only by extraordinary efforts and expense that the project was completed by July 21st. The court finds that the building was in the process of construction as of July 1.

■    The county conversely contends, regardless of whether the construction was complete, that Target's use of a portion of the facility before July 1 disqualifies the whole facility. The parties do not dispute that the administrative offices, restrooms, break rooms, and other areas within the distribution center were used for administrative matters and for training. The department has adopted an administrative rule pertaining to the exemption in question. The relevant portion of OAR 105-307.330(2)(d) states:

> "No exemption may be allowed if use or occupancy is made of the building, structure or addition, *or any part thereof*, on or before July 1 of any tax year in which the exemption is claimed. Use or occupancy refers to that use or occupancy for which the building is *intended* upon completion. For example, the use of a warehouse for storage of materials or the rental of an apartment in a new apartment building will defeat the exemption. Testing of equipment preparatory to operation is allowable during the period of construction 'Testing' can include a limited trial production run as a check of equipment and system performance." (Emphasis added.)

The county argues that using the administrative offices for ordering supplies, hiring new employees, and conducting management conferences or meetings is consistent with the intended purposes of those areas and therefore disqualifies Target from obtaining the exemption. Target contends that the building is intended as a distribution center, not as an office complex or training center. It reasons that use of the administrative office in connection with the organizing, training, and starting up of the distribution center is not a disqualifying use.

■■    This is a difficult question. Undoubtedly, very small areas such as the restrooms were completed and used by workers during construction of the building as well as by Target personnel and new hires. The county appraiser expressed the view that while such use technically could disqualify the property, the assessor applied a reasonableness standard. However, the rule does not contemplate a reasonableness standard. Rather, it requires that use be related to the intended use of the building. The county's interpretation would eviscerate the rule in that as soon as the floor was being used to walk on, or windows to keep the rain out, the structure would be "in use." Of necessity, the rule looks to the overall intended use of the building, not its component parts. If use of the administrative offices, restrooms, and other areas are not used in connection with or concomitant to the use of the building as a distribution center, such use is not a disqualifying use under the statute.

■■    Testing of equipment during construction does not disqualify a property from exemption. This suggests that using parts of a building in connection with testing must be an acceptable use. Certainly, testing of equipment suggests the presence of employees who have been trained to operate the equipment and the presence of samples of materials or product to use in testing the equipment. Testing also suggests limited administration to allow communication, reports, questions, and advice with regard to the testing. It is unlikely that the legislature intended to allow an owner to test the equipment, but not allow the employees performing the tests to use the restrooms, break rooms, parking lot, or other parts of the building and structure which play a supplemental or supportive role. Reason indicates that testing of

equipment may involve all aspects and use of the building or structure.

██ ██    It is consistent with the statute that the building be exempt until it is ready to begin such use as will permit the owners to obtain a profit. Consequently, there is no "use or occupancy" until the essential machinery is installed and has been tested. *Philips Industries v. Dept. of Rev.*, 5 OTR 462 (1974).

In summary, the court finds that the subject property was intended to be used as a regional distribution center. As of July 1, 1996, the building was still in the process of construction. As of July 1, 1996, installation of the conveyor system was not completed. Also, as of that date, Target's use of the building for organizing, hiring, training, and testing equipment were all preparatory activities, which do not constitute use and occupancy within the meaning of the statute. The department's Opinion and Order No. 96-5547 is sustained. Intervenor to recover its costs and disbursements.