IN THE OREGON TAX COURT
REGULAR DIVISION

TRENDWEST RESORTS, INC.,
*Plaintiff,*

*v.*

DEPARTMENT OF REVENUE,
*and*

CLATSOP COUNTY ASSESSOR,
*Defendants.*

(TC 4645)

Carol Vogt Lavine, Gladstone, filed Plaintiff's Cross Motion for Summary Judgment and argued the cause for Plaintiff (taxpayer).

Joseph A. Laronge, Assistant Attorney General, Department of Justice, Salem, filed Defendant's Cross Motion for Summary Judgment, and James C. Wallace, Assistant Attorney General, Department of Justice, Salem, argued the cause for Defendant Department of Revenue.

Healther L. Reynolds, Clatsop County Counsel, Astoria, filed a stipulation of facts for Defendant (the county) but did not argue the cause.

Decision for Defendant rendered January 20, 2005.

**HENRY C. BREITHAUPT, Judge.**

## I.   INTRODUCTION

This matter is before the court on a stipulated record and cross motions for summary judgment.

## II.  FACTS

Plaintiff (taxpayer) is an Oregon corporation engaged in the development and management of time-share condominium resorts. Taxpayer desired to develop a condominium resort in Seaside, Oregon. To that end, taxpayer obtained certain real property for the purpose of constructing a mixed-use project consisting of retail condominiums, time-share residential condominiums, and a parking structure. The property at issue in this case was that portion of the mixed-use project consisting solely of retail and residential condominium units (the project).

Although taxpayer acquired real property needed for its development plans from certain landowners in fee simple, taxpayer was unable to acquire property owned by William A. Ter Har, Trustee of the Jean R. Ter Har Revocable Living Trust, and Jean R. Ter Har, Trustee of the William A. Ter Har Revocable Living Trust (Ter Har). Ter Har desired to continue its business as an operator of retail stores on that property (the Ter Har land), at least in part due to income tax reasons.

On September 14, 2001, Ter Har and taxpayer entered into a ground lease under which Ter Har granted taxpayer the authority to redevelop the Ter Har land. Under that authority, taxpayer was permitted to construct the project on the Ter Har land and to retain ownership rights in all improvements to the Ter Har land. In addition to the ground lease, the parties also entered into an exchange agreement, which provided that taxpayer would sublease, rent-free, a portion of the project (the retail space) back to Ter Har on or before June 12, 2002. Taxpayer was required to make business interruption payments to Ter Har for any period between the execution of the exchange agreement and the time of the sublease of the retail space back to Ter Har. Taxpayer subleased the retail space to Ter Har during 2002.

As of January 1, 2003, Ter Har and Ter Har tenants occupied most of the retail space. No access exists between the retail space and the project. The retail space has separate electrical, fire, and HVAC systems, separate entrances, and all systems, such as water and sewer, are separately metered.

On May 7, 2003, pursuant to the exchange agreement Ter Har transferred title to the Ter Har land to taxpayer. Thereafter, on June 26, 2003, taxpayers recorded on the records of the county a declaration of condominium ownership for the project with an effective date of May 16, 2003. Vouchers creating separate tax lots for each condominium unit were created between July 22 and July 26, 2003. Finally, on September 25, 2003, taxpayer transferred title to seven retail condominium units, which contained the retail space, to Ter Har.

Viewed from a modest distance, those transactions can be characterized as follows. Ter Har owned, in fee simple, land upon which taxpayer desired to construct a portion of the project. Ter Har was willing to permit construction of the project on the Ter Har land and to cede certain ownership rights to taxpayer on the condition that Ter Har receive business interruption payments, leasehold rights to continue business operations, and, ultimately, ownership of seven retail condominium units. As of January 1, 2003, Ter Har did not own any portion of the improvements comprising the project.

On March 31, 2003, taxpayer applied for cancellation of assessment pursuant to ORS 307.330.[1] The application was for all improvements comprising the project; *i.e.*, the improvements that later became the residential and retail condominiums. The county assessor determined that the retail space was in use or occupancy on January 1, 2003, and, as a result, denied taxpayer's application. Taxpayer appealed that denial to this court. The matter was specially designated to the Regular Division. Defendant Department of Revenue (the department) argued the cause for itself and for the county.

## III. ISSUE

Is taxpayer entitled to property taxation exemption for any portion of a mixed-use retail and residential project for the 2003-04 property tax year when some of that project was in use or occupancy on January 1, 2003?

---

[1] All references to the Oregon Revised Statutes (ORS) are to 2001.

# IV. ANALYSIS

Taxpayer seeks property tax exemption under ORS 307.330, which provides, in pertinent part:

"(1)  * * * each new building or structure or addition to an existing building or structure is exempt from taxation for each assessment year of not more than two consecutive years if the building, structure or addition:

"(a)  Is in the process of construction on January 1;

"(b)  Is not in use or occupancy on January 1;

"(c)  Has not been in use or occupancy at any time prior to such January 1 date;

"(d)  Is being constructed in furtherance of the production of income; and

"(e)  Is, in the case of nonmanufacturing facilities, to be first used or occupied not less than one year from the time construction commences. * * *."

Taxpayer claims the benefit of the property tax exemption in ORS 307.330 for the nonretail space portion of the project under one of at least three theories: (1) the retail space was a separate structure or structures apart from the rest of the project, and the use of the retail space by Ter Har did not disqualify the remaining portion of the project; (2) Ter Har's use of the retail space did not qualify as an intended use of taxpayer and, therefore, did not disqualify the remaining portion of the project; or (3) this court should overrule recent precedent in order to provide for severability of portions of a building or structure based on the intended uses of the separate owners of those portions, in analysis under ORS 307.330. The court addresses those arguments in turn.

A.  *"Each New Building or Structure"*

Although ORS 307.330 provides an exemption for "each new building or structure," neither term is defined in the statute. The court's task in interpreting any statute is to discern the intent of the legislature. *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610, 859 P2d 1143 (1993). The court begins by examining both the text and context of the

statute. *Id.* at 610-11. Starting with the statutory text, "the court considers rules of construction * * * that bear directly on how to read the text." *Id.* at 611. Those rules are found in the statutes and in applicable case law. *Id.* For example, the court reasonably construes the statute, giving words of common usage their plain, natural, and ordinary meaning. *Id.* The court is also guided by "the precept that the claimant of an exemption is required to bring itself within the terms of the statute." *North Harbour Corp. v. Dept. of Rev.*, 16 OTR 91, 95 (2002).

**4.**    "Building" is a word of common usage and has as its ordinary meaning:

> "a constructed edifice designed to stand more or less permanently, covering a space of land, usu. covered by a roof and more or less completely enclosed by walls, and serving as a dwelling, storehouse, factory, shelter for animals, or other structure—distinguished from structures not designed for occupancy (as fences or monuments) and from structures not intended for use in one place (as boats or trailers) even though subject to occupancy."

*Webster's Third New Int'l Dictionary* 292 (unabridged ed 2002). "Structure," in turn, has an ordinary meaning of "something constructed or built[,] * * * something made up of more or less interdependent elements or parts * * *." *Id.* at 2267. The court has stated:

> "The use of the word 'structure' in the disjunctive with the word 'building' is instructive. While a building is always a structure, all structures are not buildings. The word 'structure' is one of the broadest words in the English language and is very comprehensive. * * * An important connotation of 'structure' is a concept of a number of elements or components being viewed as a whole, a universe, an ensemble. * * * The legislature, in using 'structure,' is deemed to have contemplated the situation in which a plant, designed for a very specific use and not adaptable for any other purpose, could be regarded as useless until the whole structure is basically operable."

*Collier Carbon v. Dept. of Rev.*, 5 OTR 1, 6-7, *aff'd*, 263 Or 414, 502 P2d 595 (1972) (internal citations and quotations omitted). The court concludes that the ordinary meaning of

"building" is a single, self-contained unit designed for occupancy, whereas the ordinary meaning of "structure" contemplates a single, self-contained unit not designed for occupancy or a combination of at least two interdependent units, one of which may be a building. *See* OAR 150-307.330.

Citing to *Collier Carbon*, taxpayer asserts that the project, minus the retail space occupied by Ter Har and Ter Har's tenants as of January 1, 2003, qualifies for property tax exemption because the project is essentially a structure composed of a number of individual structures, each of which must be viewed separately. In support of that argument, taxpayer asserts that each space that ultimately became a condominium was a structure. Having implicated the condominium form of property ownership, taxpayer points to ORS 100.555(1)(a), which provides that each condominium unit is "subject to separate assessment and taxation by any taxing unit in like manner as other parcels of real party." Under taxpayer's argument, therefore, only the seven completed "condominiums" subleased to Ter Har by taxpayer were subject to property taxation and all of the other "condominiums" were exempt from property taxation under ORS 307.330.

The court need not address what impact, if any, the condominium form of property ownership might have on the application of ORS 307.330 for the reasons that follow. As discussed in greater detail above, the project was not divided into legally cognizable condominium units as of January 1, 2003. As of that date taxpayer owned the entire project in fee simple. Ter Har was the owner of some land under the project and a sublessee of the retail space in the project. Only later did the parties consummate the remaining provisions of the exchange agreement that vested ownership of the Ter Har land in taxpayer, permitting taxpayer to form legally cognizable condominium units.

On that basis, therefore, the court concludes that taxpayer's argument that the portion of the project subleased to Ter Har was a separate structure or set of structures must fail. It is the improvement on the property that attracts the benefits of the property tax exemption under ORS 307.330.

No portion of the project was actually segregated into condominiums as of January 1, 2003. As of that date, the court concludes that the project was a single building or structure.

■　　In a related argument, taxpayer further asserts that the retail space may be considered a separate structure or set of structures because it was functionally separate from the rest of the project. In particular, taxpayer points to the fact that no access existed between the retail space and the project, the retail space has separate electrical, fire, and HVAC systems and separate entrances, and all systems, such as water and sewer, are separately metered. The department contends that portions of the same building or structure may not be treated as separate buildings or structures. This court has held "that use of any part of a building or structure will disqualify the whole." *Multnomah County v. Dept. of Rev.*, 13 OTR 223, 230 (1995). Based on that case precedent, the court concludes that the portion of the retail space used or occupied by Ter Har as of January 1, 2003, may not be treated as a building or structure separate from the remainder of the project.[2]

■　　That finding is consistent with the context in which ORS 307.330 is found; *i.e.*, property tax exemption statutes. As the department asserts, that statutory context includes examples of property tax exemption statutes, which expressly apply to portions of pieces of property. *See, e.g.*, ORS 307.517(1). *See also* ORS 307.095(1); ORS 307.130(1)(a); ORS 307.136(1); ORS 307.140(1). Thus, if the drafters of ORS 307.330 had intended the statute to apply to portions of a building or structure, they would have made that intention express. They did not. As this court has previously stated,

> "the exemptions [in ORS 307.330] are not provided for in increments, but apply to entire buildings or structures. In short, the statute does not establish a finely-tuned partnership between government and private enterprise, but a basic benefit with large and simple parameters."

---

[2] Although not dispositive, the court also notes that the parties contemplated that the project would be viewed as a single building or structure. *See* Ex G at 4 (" 'Project' means the timeshare and retail condominium development to be constructed by Trendwest * * *.").

*Multnomah County*, 13 OTR at 229.

Based on the foregoing, the court concludes that the retail space used or occupied by Ter Har as of January 1, 2003, was not a building or structure separate from the remainder of the project within the meaning of ORS 307.330, and the use of a portion of the project may disqualify the entire project.

B.   *Intended Use or Occupancy*

■■     A property may qualify for property tax exemption under ORS 307.330 if it "[i]s not in use or occupancy on January 1" of the property tax year in question. The department has promulgated a rule, which provides that "[u]se or occupancy refers to that commercial use or occupancy for which the building is intended upon completion." OAR 150.307.330(2)(d). The intent to be measured is that of the entrepreneurial developer of the project. *See Philips Industries v. Dept. of Rev.*, 5 OTR 462, 469 (1974). Taxpayer asserts that intent is measured by considering the developer's "primary" purpose for constructing the project. That is not the correct focus. As this court has stated, "[o]f necessity, the rule looks to the overall intended use of the building, not its component parts." *Linn County v. Dept. of Rev.*, 14 OTR 257, 262 (1998). Thus, the court must determine the developer's overall purpose for constructing the project, not its primary purpose.

The court has found that as of the measuring date of January 1, 2003, taxpayer owned a single building or structure, a portion of which was located on land that taxpayer had leased from Ter Har pursuant to a ground lease. Taxpayer was the developer of that building; therefore, it is taxpayer's intended use for the overall building or structure, and not its component parts, that is the measure for whether the building or structure was in use as of January 1, 2003.

In the parties' stipulation of facts, taxpayer's intent is discussed: "[taxpayer] acquired certain real property * * * for the purpose of constructing a mixed use project consisting of retail condominiums, time share condominiums and a parking structure." Moreover, the record establishes that

taxpayer intended to construct a mixed-use, retail and commercial project, a portion of which taxpayer intended to sublease to Ter Har until the completed project was ready to be segmented into legally cognizable condominiums. In fact, Ter Har used or occupied a portion of the project for that intended purpose. On this record, therefore, the court finds that, as of January 1, 2003, the building or structure was used or occupied consistent with taxpayer's overall purpose.

Taxpayer further contends, however, that the court should consider the use intended by Ter Har as being separate from that of taxpayer. In effect, taxpayer urges the court to consider that in substance taxpayer and Ter Har desired to separately own distinct portions of the project and, therefore, the intent of each should control the inquiry. Taxpayer's theory ignores, however, the fact that as of January 1, 2003, taxpayer held all the ownership rights in the project. Ter Har did not separately own any portion of the improvements constituting the project. Ter Har merely was subleasing a portion, rent-free, from taxpayer.

Although the record indicates that taxpayer and Ter Har did eventually consummate their various agreements, that is irrelevant under ORS 307.330. That statute, with its "large and simple parameters," is concerned with the entrepreneur's intended use as of January 1 of the property tax year in question. *Multnomah County*, 13 OTR at 229. In this case, taxpayer was sole owner and developer of the project as of January 1, 2003. Taxpayer intended that a portion of the project would be subleased by mid-2002 for use or occupancy by Ter Har. That use by Ter Har was of substantial benefit to taxpayer because, once it commenced, taxpayer was no longer required to make business interruption payments. As of January 1, 2003, Ter Har was occupying a portion of the project pursuant to that sublease. Based on the foregoing, therefore, the court concludes that the project was in use or occupancy for taxpayer's intended purpose as of January 1, 2003.

C.  *Taxpayer's Desire to Overrule Recent Precedent*

Taxpayer asserts that, even if it does not prevail on either of the two preceding arguments, it nonetheless may prevail in this case if this court overrules *Multnomah County*,

to the extent that case held "that use of any part of a building or structure will disqualify the whole." 13 OTR at 230. In support of that request, taxpayer makes the following argument:

"It is inconceivable that the legislature could have intended that in the case of a mixed use project, *where different parties separately own distinct portions* for very different and distinct purposes, such as the Project at issue, should be disqualified simply because one small part of the project owned by one party is in use for its intended purpose, while the majority of the project is still under construction and is thus not capable of being used for its intended purpose by the entrepreneur."

(Emphasis added.) In its responsive briefing on its cross-motion for summary judgment, taxpayer reiterated that:

"the question is whether the text of ORS 307.330 allows condominium units in a multipurpose project developed for use by multiple, unrelated owners for different uses, and *which are in fact owned and operated by multiple, unrelated owners* for different uses, to be treated as separate structures."

(Emphasis added.)

Thus, taxpayer has narrowly framed its request for a review of this court's decision in *Multnomah County* to situations in which separate parties separately own distinct portions of the same building or structure. That request must be denied here because, as the court has found above, as of the measuring date of January 1, 2003, the improvements constituting the project were owned solely by taxpayer. The project was not composed of distinct portions separately owned by different parties. On that basis the court declines to address whether or how the court's opinion in *Multnomah County* would apply to portions of an improvement separately owned on the statutory determination date.

## V.  CONCLUSION

Based on the foregoing reasons, the court concludes that the portion of the project used or occupied by Ter Har as of January 1, 2003, was not a separate building or structure and that the use or occupancy of that portion disqualifies the

project from the property tax exemption in ORS 307.330. Now, therefore,

IT IS ORDERED that Plaintiff's Cross Motion for Summary Judgment is denied; and

IT IS FURTHER ORDERED that Defendant's Cross Motion for Summary Judgment is granted.