Argued and submitted March 9, judgment of Oregon Tax Court
affirmed April 27, 2006

TRENDWEST RESORTS, INC.,
*Appellant,*

*v.*

DEPARTMENT OF REVENUE,
and Clatsop County Assessor,
*Respondents.*

(TC 4645; SC S52491)

134 P3d 932

Timothy R. Volpert, of Davis Wright Tremaine LLP,
Portland, argued the cause and filed the brief for appellant.

With him on the brief were Margarita G. Molina, of Davis Wright Tremaine LLP, and Carol Vogt Lavine, of Carol Vogt Lavine, LLC, Gladstone.

Joseph A. Laronge, Assistant Attorney General, Salem, argued the cause and filed the brief for respondent Department of Revenue. With him on the brief was Hardy Myers, Attorney General.

Heather Reynolds, Clatsop County Counsel, Astoria, waived appearance for respondent Clatsop County Assessor.

GILLETTE, J.

## GILLETTE, J.

The issue in this appeal from a judgment of the Oregon Tax Court is whether that court erred in holding that taxpayer was not entitled to an ad valorem property tax exemption under ORS 307.330(1) for the 2003-04 tax year, for a building that was under construction on January 1, 2003. The Tax Court concluded that the building was not eligible for the exemption because, on January 1, 2003, a part of the building was "in use or occupancy," as that phrase is used in ORS 307.330(1)(b). *Trendwest Resorts, Inc. v. Dept. of Rev.*, 18 OTR 187 (2005). Taxpayer appealed to this court. We affirm.

The relevant facts are not in dispute, although their legal significance is. Taxpayer is an Oregon corporation engaged in the business of developing and managing time-share condominium resorts. In 2001, taxpayer began to purchase property for a planned mixed-use resort development in Seaside. The development was designed to include time-share residential condominiums, retail condominiums, and a parking structure. Taxpayer acquired some of the property needed for the development in fee simple but acquired one property—the "Ter Har" property—under a more complex scheme.

The Ter Har property previously had been developed as retail spaces, and the owners of that property wished to continue to own and operate retail space on it. Taxpayer and the Ter Har owners worked out an arrangement that allowed taxpayer to develop the property according to its plan and, at the same time, to accommodate the Ter Har owners' wishes. Specifically, the parties foresaw construction of a multistory building with residential condominiums owned by taxpayer on the upper floors and retail condominiums, some of which would be owned by the Ter Har owners, on the ground floor. Toward that end, taxpayer and the Ter Har owners entered into a ground lease on September 14, 2001, which allowed taxpayer to demolish the existing retail structure and construct the planned building. Simultaneously, the parties entered into an exchange agreement that provided that (1) as soon as possible and, in any event, by June 12, 2002, taxpayer

would complete and sublease (rent free) to the Ter Har owners the planned retail part of the building ("the retail space"); (2) taxpayer would make business interruption payments to the Ter Har owners in the meantime; (3) the Ter Har owners ultimately would transfer their title in the land to taxpayer; and (4) taxpayer then would convert the land and improvements to condominium ownership and would transfer title to the retail space (in the form of seven retail condominiums) back to the Ter Har owners.

In accordance with that exchange agreement, taxpayer began building the project and leased the retail space to the Ter Har owners and their tenants as soon as those spaces were finished. The leases continued throughout 2002 and a part of 2003 while the remainder of the project was completed. On May 7, 2003, the Ter Har owners transferred title to the land to taxpayer. Taxpayer thereafter created a separate tax lot for each condominium unit and recorded that arrangement in the county records. On September 25, 2003, taxpayer transferred title to seven retail condominium units, which constituted the retail space, to the Ter Har owners. Thus, the Ter Har owners did not have title to any part of taxpayer's project (as opposed to the land) until that date.

On March 31, 2003, taxpayer applied for a cancellation of the county tax assessment for the 2003-04 tax year for the entire condominium project. Taxpayer relied on ORS 307.330(1), which provides:

> "Except for property centrally assessed by the Department of Revenue, each new building or structure or addition to an existing building or structure is exempt from taxation for each assessment year of not more than two consecutive years if the building, structure or addition:
>
> "(a) Is in the process of construction on January 1;
>
> "(b) Is not in use or occupancy on January 1;
>
> "(c) Has not been in use or occupancy at any time prior to such January 1 date;
>
> "(d) Is being constructed in furtherance of the production of income; and
>
> "(e) Is, in the case of nonmanufacturing facilities, to be first used or occupied not less than one year from the time

construction commences. Construction shall not be deemed to have commenced until after demolition, if any, is completed."

The county tax assessor denied taxpayer's request on the ground that retail spaces on the ground floor of the project were "in use or occupancy" on January 1, 2003, and, therefore, the project was ineligible for the exemption.

Taxpayer appealed that denial to the Tax Court, where both taxpayer and the Department of Revenue (department) (representing the county assessor) moved for summary judgment. The Tax Court granted the department's motion, concluding that ORS 307.330(1) did not exempt taxpayer's project from taxation for the time period in question. *Trendwest Resorts*, 18 OTR at 197-98. The court held that the term "building" in that statute means "a single, self-contained unit designed for occupancy" and that the term "structure" contemplates "a single, self-contained unit not designed for occupancy or a combination of at least two interdependent units, one of which may be a building." *Id.* at 192-93. Applying those meanings, the court concluded that, as of January 1, 2003 (the relevant date for purposes of the statute), taxpayer's project was a single building or structure that was owned entirely by taxpayer. Noting that the project was not converted to condominium ownership until the middle of 2003, the court specifically rejected taxpayer's suggestion that the retail part of the project was a separate "structure" at the relevant time. *Id.* at 193.

The Tax Court also rejected taxpayer's alternative argument that the retail space could be considered separate because it was "functionally" separate, having separate utilities, separate entrances, and the like. The Tax Court adverted to the following statement from one of its own precedents, *Multnomah County v. Dept. of Rev*, 13 OTR 223, 229 (1995):

> "[T]he exemptions [in ORS 307.330] are not provided for in increments, but apply to entire buildings or structures. In short, the statute does not establish a finely-tuned partnership between government and private enterprise, but a basic benefit with large and simple parameters."

Finally, the Tax Court also rejected taxpayer's argument that the department had misconstrued the requirement in paragraph (b) of the statute that the structure or building not be "in use or occupancy" on January 1. Taxpayer had argued that, when the legislative history of the statute as a whole and the context of the phrase "use or occupancy" were considered, it was clear that the phrase meant use or occupancy that directly produced income for the taxpayer (and that the taxpayer then could use to pay taxes on the property). The Tax Court agreed with taxpayer that any disqualifying "use" must relate to the taxpayer's intended income-producing purpose in building the structure or building, but ruled that taxpayer was defining its own intentions too narrowly. The court concluded that occupancy of the retail space by the Ter Har owners was part of taxpayer's overall intended commercial use of the property (as a mixed-use condominium project) and that that use was sufficient to meet the statutory standard.

Based on the foregoing reasoning, the Tax Court granted the department's motion for summary judgment and denied taxpayer's cross-motion, thereby affirming the county assessor's denial of taxpayer's request. The present appeal followed.

As discussed above, the Tax Court held that taxpayer's property did not qualify for that exemption under ORS 307.330(1)(b) because part of the property was "in use or occupancy" on January 1. Taxpayer attacks that analysis with three arguments. First, taxpayer argues that, when the text of that statutory subsection is considered in the context of the introductory part of subsection (1), it becomes apparent that the Tax Court has misconstrued ORS 307.330(1)(b).[1] It argues that the phrase, "building, structure or addition," in ORS 307.330(1) is

---

[1] We set out the wording of that introductory paragraph again to assist the reader:

"Except for property centrally assessed by the Department of Revenue, each new building or structure or addition to an existing building or structure is exempt from taxation for each assessment year of not more than two consecutive years * * *."

"susceptible to varying interpretations because that phrase is not modified to specify whether it means the entire building[,] structure or addition, or some part thereof. On the other hand, any apparent ambiguity in this regard is likely resolved by the legislature's inclusion of the word 'addition.' Such inclusion demonstrates the legislature's intent that the exemption apply to portions of buildings and structures."

As we have mentioned, the Tax Court did not accept the foregoing argument. Neither do we. There is no ambiguity in the statutory wording respecting the facts of this case. The building at issue was constructed after the former building was demolished. The present building is not, under any reasonable definition of the word, an "addition." It is, instead, a new building. Taxpayer's contrary argument does nothing to advance our inquiry, and we reject it without further discussion.

Taxpayer's second argument focuses on the Tax Court's interpretation of the requirement in ORS 307.330(1)(b) that the building or structure in question not be "in use or occupancy" on January 1 of the year in question. Taxpayer asserts that that requirement must be read in the context of the requirement in ORS 307.330(1)(d) that the building or structure be "constructed in furtherance of the production of income." Taxpayer then contends that, when the two provisions are read together, it is clear that "use or occupancy" is restricted to uses that can produce income *for the taxpayer* in the form of an income stream that the taxpayer can use to pay taxes.[2] And it follows, taxpayer reasons, that, until such persons who otherwise might be regarded as users or occupants are producing for the taxpayer the type of income that was contemplated by the project, the project is not "in use or occupancy."

Applying its conclusion about the meaning of "use and occupancy" to the property at issue, taxpayer contends that the statutory exemption must apply because the Ter

---

[2] In other words, according to taxpayer, the fact that the project is "in use or occupancy" in the sense that persons are present in the project on either a permanent or periodic basis and engaged in the kinds of activity contemplated by the project is not enough to defeat taxpayer's entitlement to an exemption under ORS 307.330(1), when paragraph (b) is read in context.

Har owners' occupation of the retail space as of January 1, 2003, did not and could not generate income for taxpayer. Taxpayer argues, moreover, that the Ter Har owners' occupancy of the retail space was not a "use" within the meaning of ORS 307.330(1)(b) because it had nothing to do with taxpayer's primary purpose in constructing the project. In that regard, taxpayer defines its purpose narrowly—as "selling time-share condominiums" for a profit. Taxpayer rejects the idea that it ever had any intention to make a profit from subleasing retail condominiums to the Ter Har owners or to any other third party. It argues:

> "The only reason the Ter Har retail condominiums were built was to acquire title to the real property from Ter Har. * * * [B]uilding and conveying title to the retail condominiums to Ter Har was solely a means to an end. And Ter Har's use and occupancy of those condominiums had nothing whatsoever to do with [taxpayer's] purpose in building the timeshare resort. The legislature could not have intended for [taxpayer] to lose the exemption purely because of happenstance."

We are unpersuaded by taxpayer's interpretation and application of the "in use or occupancy" criterion for two reasons. First, "income," as that term is used in ORS 307.330(1)(d), is not, by its plain terms, either when read alone or in context, limited to income produced for the taxpayer. Thus, that part of taxpayer's premise is not well taken.

Second, and even if taxpayer's premise were correct, taxpayer's attempt to fold the requirement of paragraph (d) of ORS 307.330(1) into paragraph (b) of that same statute cannot, in our view, be correct. Each of those two statutory paragraphs is independent; each provides a separate criterion that a taxpayer must meet in order to qualify for the statutory exemption, and a taxpayer must satisfy them all. But, if the "in furtherance of the production of income" criterion of paragraph (d) is read back into the "not in use or occupancy" criterion in paragraph (b), the "in furtherance of the production of income" criterion in fact would be used twice, to the derogation of the "not in use or occupancy" criterion. We can perceive no justification for such a double reading of one paragraph in order to modify the plain content of the other.[3]

---

[3] Taxpayer suggests that the meaning for which it contends is consistent with the legislative history of ORS 307.330, which (according to taxpayer) shows that

It follows that, absent a more compelling argument on tax-payer's part, we are of the opinion that the Tax Court correctly interpreted and applied the pertinent statutory wording.

■     Taxpayer argues that certain Tax Court case law under ORS 307.330(1) does not support the Tax Court's application of the phrase, "use or occupancy." That argument misses the mark. Although we commonly give tax court case law close attention for its intrinsic logical value, this court is not bound by decisions of the Oregon Tax Court. We therefore decline to enter into the extensive study of Tax Court precedents that taxpayer offers and that the department to some extent joins. The only truly pertinent Tax Court opinion at the moment is the one under review in this appeal, and we confine our inquiry to that case and the sources of law that underpin it.

Finally, and assuming that the retail space part of the project was "in use or occupancy" on January 1, 2003, tax-payer advances its third theory. It contends that ORS 307.330(1) provides for a partial exemption from taxation when a building is only partially in use or occupancy. However, as we already have explained, we find no wording in the statute that suggests the possibility of a partial exemption like the one that taxpayer claims here. This is one new building; the exemption either applies to the building as a building, or it does not.[4]

In summary, we do not find any of taxpayer's arguments in favor of the exemption to be well taken. The Tax

---

the legislature was concerned with providing relief from the disincentive to economic activity that arises when property is subjected to taxation before it produces income. We do not deem it necessary to consult legislative history to resolve this problem, inasmuch as the text of the statute seems clear to us. However, we none-theless have examined the legislative history that taxpayer has proffered to us. Aside from a clear legislative intent to encourage construction by making an ad valorem tax exemption available under certain carefully defined circumstances, we find the legislative history to be ambiguous and unhelpful. Certainly, it does nothing to negate our reading of the statutory text itself, read in context.

[4] We note also that, as the department points out, other statutes in the same chapter that provide for partial exemption do so in express terms. See, e.g., ORS 307.517(1) ("Property or a portion of the property that meets the following criteria * * * shall be exempt.").

Court properly granted the department's motion for summary judgment and denied taxpayer's cross-motion for summary judgment.

The judgment of the Oregon Tax Court is affirmed.